107 P.3d 775 (2005)
STATE of Washington, Respondent,
v.
Robert L. BLADE, Appellant.
No. 29684-5-II.
Court of Appeals of Washington, Division 2.
March 3, 2005.
*776 Thomas C. Duffy, Attorney at Law, Vancouver, WA, for Respondent.
David Schultz, Attorney at Law, Camas, WA, for Appellant.

PART PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 Robert L. Blade appeals his convictions for two counts of manufacturing methamphetamine, arguing that the trial court erred in (1) admitting his statements to the police, (2) refusing to sever the counts, (3) failing to give unanimity and attempt instructions, and (4) failing to instruct the jury it had to find a nexus between his possession of the weapons and the manufacturing. Blade also contends that his counsel was ineffective and that the evidence was insufficient to convict him of count three and for the firearm enhancement on count one. The evidence was sufficient and the instructions were proper, but the trial court erred when it used the longer deadly weapon enhancement for class A felonies in determining Blade's sentence for count three. Accordingly, we affirm Blade's convictions, but remand for resentencing on count three.

FACTS
¶ 2 On May 11, 2002, Officer Patrick Moore and two other officers of the Vancouver Police Department learned of a possible methamphetamine lab in room 105 of the Best Western Motel in Vancouver. The officers went to the motel to conduct a "knock and talk" with the occupant of room 105, later identified as Robert L. Blade. II Report of Proceedings (RP) at 118-19. Moore knocked and announced his presence several times; he could tell someone was in the room but no one answered. When Moore phoned room 105 from the main office, Blade answered and agreed to talk with Moore; he said he would meet the officers outside the front door of room 105. Moore knocked on the door, Blade exited, quickly shut the door, and locked it.
¶ 3 When Blade first opened the door, Moore smelled solvents, which he associated with methamphetamine labs. Blade was also very nervous, sweating, and shaking. Moore told Blade he had heard of a possible methamphetamine lab and that he was not concerned if Blade had a small amount of drugs for personal use, but he was concerned for the motel occupants' safety if Blade had an active methamphetamine lab in the room. Blade told Moore that he had acetone, Coleman fuel, specific amounts of red phosphorous, iodine powder, pulled ephedrine, and a heating device, all commonly used in making methamphetamine. Moore asked Blade when he had last cooked methamphetamine; Blade said around 8:00 P.M. the day before and that the cook had yielded about four grams of methamphetamine. Blade told Moore he got the red phosphorous from matchbooks and the iodine from a feed store.
¶ 4 Moore then asked Blade for consent to search the room. Blade said he was not sure if he wanted to consent to the search, but after Moore said he would freeze the room and apply for a warrant, Blade agreed and signed a consent to search. Blade gave the officers the key to the room. As the officers entered the room, Blade told them he had a .22 caliber pistol under the mattress. Blade remained outside the room, two or three feet from the door, next to one of the officers. The officers found the .22 and methamphetamine ingredients where Blade had described.
¶ 5 Moore then arrested Blade for manufacturing methamphetamine and read him his Miranda[1] rights. Blade said he understood his rights and that he was willing to talk with Moore. Moore testified that Blade told him that he had been cooking methamphetamine for the past year, "specifically [Blade] told me he's been cooking two to three times a week for the last three months, *777 with each  each time or each cook ... yielding two to five grams of finished product, finished methamphetamine." II RP at 139. Blade said that he did not actively deal drugs but he did give some to friends in return for gas or food money. Blade's counsel objected to this testimony.
¶ 6 Detective John Hess of the Clark-Skamania Narcotics Task Force also responded to the scene and assessed room 105. Hess testified that someone had recently manufactured methamphetamine in the room because the red phosphorous was wet and chunky.
¶ 7 On July 8, 2002, Officer Ray Reynolds of the Vancouver Police Department stopped Blade's car for speeding. Sixteen-year-old D.A. was a passenger in the vehicle. Reynolds testified that Blade was nervous and shaking and that D.A. avoided contact with him. The vehicle reeked of a chemical odor and Reynolds noticed a gallon tin of acetone behind the front passenger seat. When Reynolds searched the vehicle, he found a package containing matches with the striking pads removed and a ziplock baggie containing smaller baggies and pliers. Reynolds suspected a methamphetamine lab.
¶ 8 When Hess conducted a warrant search of the vehicle on July 11, 2002, he recovered a cardboard box containing the covers of the matches, a straw, plastic spoon, and a notebook with references to the need for pH papers, a hotplate, and a knife with a blade in excess of three inches. Hess testified that these items pointed to "[t]he preparation ... of obtaining the red phosphorous for a red phosphorous/iodine/pseudo-ephedrine method [of methamphetamine manufacturing]." III-A RP at 237. Hess then described how the red phosphorous could be obtained by combining the striker pads with acetone, as had been done at the Best Western.
¶ 9 During trial, Blade's counsel did not object to testimony describing Blade's initial reluctance to consent to the May 11 search.
¶ 10 The State charged Blade with three counts of manufacturing methamphetamine. Count one alleged school bus zone and firearm enhancements and count three alleged manufacturing while a juvenile was present and deadly weapon enhancements. A jury convicted Blade as charged in counts one and three, answered yes to the special verdicts associated with these counts, and acquitted him on count two. Before and during trial, Blade moved to sever counts one and three. During closing argument, Blade's trial counsel conceded his guilt to count one.
¶ 11 The court sentenced Blade to a total confinement of 199 months based on total standard ranges of 151-173 months for count one and 105-123 months based on count three. The court used firearm and school bus enhancements on count one.

ANALYSIS

I. Sentencing
¶ 12 Blade argues that the trial court erred when it calculated his standard range. The crux of Blade's argument is that the sentencing court erred when it used the increased firearm and deadly weapon enhancements available when a crime is defined as a class A felony or has a statutory maximum penalty of at least 20 years. See Former RCW 9.94A.510(3)(a), (4)(a) (2002). We affirm the special verdicts, but remand for resentencing on count three because the trial court impermissibly used the deadly weapon enhancement for class A felonies or felonies with a 20-year maximum sentence.
¶ 13 Blade's conviction on count one carried school bus stop and firearm enhancements. The school zone enhancement for count one allows punishment "up to twice the imprisonment otherwise authorized by [chapter 69.50 RCW]." RCW 69.50.435(a)(3). Blade's appropriate firearm enhancement depends on the length of the maximum sentence for count one.
¶ 14 If the defendant was armed with a firearm, former RCW 9.94A.510(3)(a) (2002) added three years to his standard sentence range for class B felonies or felonies with statutory maximum sentences of 10 years. But former RCW 9.94A.510(3)(a) added five years to the standard sentence range if the underlying felony was a class A felony or had a statutory maximum sentence of at least 20 years. Methamphetamine manufacturing convictions are ordinarily class B felonies, *778 punishable by up to 10 years imprisonment. RCW 69.50.401(a)(1)(ii); RCW 9A.20.021(1)(b). We must decide whether RCW 69.50.435's doubling provision creates a new maximum sentence.
¶ 15 Under the definition of "statutory maximum sentence" in effect when Blade committed count one, the term meant "the maximum length of time for which an offender may be confined as punishment for a crime as prescribed in chapter 9A.20 RCW, RCW 9.92.010, the statute defining the crime, or other statute defining the maximum penalty for a crime." Former RCW 9.94A.030(41) (2001). The doubling provision in RCW 69.50.435 defines a new maximum penalty for the manufacture, sale, delivery, or possession with the intent to manufacture, sell, or deliver a controlled substance if the crime is committed in certain locations, including within 1,000 feet of a school bus stop. See RCW 69.50.435(a)(1)-(10).
¶ 16 And before the legislature statutorily defined "statutory maximum sentence," Division Three reached the same conclusion. State v. Barajas, 88 Wash.App. 387, 388-89, 960 P.2d 940 (1997). Barajas was convicted of possession with intent to deliver a controlled substance within 1,000 feet of a school bus stop while armed with a deadly weapon. Barajas, 88 Wash.App. at 388, 960 P.2d 940. The court concluded that the school bus stop enhancement resulted in a new maximum sentence and affirmed the trial court's imposition of the mandatory five-year deadly weapon enhancement. Barajas, 88 Wash.App. at 389, 960 P.2d 940.
¶ 17 On count three, the jury returned special verdicts that a juvenile was present during the manufacturing and that Blade was armed with a deadly weapon.
¶ 18 Under RCW 9.94A.605, if a defendant is convicted of manufacturing methamphetamine and a special allegation that "the defendant committed the crime when a person under the age of eighteen was present in or upon the premises of manufacture," is pleaded and proven beyond a reasonable doubt, the jury shall find a special verdict as to this allegation. Former RCW 9.94A.510(6) (2002) added an additional 24 months to the standard range "for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of ... [RCW 9.94A.605]." Former RCW 9.94A.510(4)(a) (2002) added two years to the standard range if the crime was a class A felony or if it had statutory maximum sentence of at least 20 years. Former RCW 9.94A.510(4)(b) (2002) added one year if the crime was a class B felony or had a statutory maximum sentence of 10 years.
¶ 19 RCW 9.94A.605 does not contain a doubling provision similar to that in RCW 69.50.435, and former RCW 9.94A.510(6) provided for an increase in the defendant's standard sentence range, not for an increase in the underlying felony's maximum sentence. Accordingly, former RCW 9.94A.510(4)(b)'s one-year enhancement, rather than former RCW 9.94A.510(4)(a)'s two-year enhancement, applies. We remand for resentencing on count three.
¶ 20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: SEINFELD, J.P.T., and QUINN-BRINTNALL, C.J.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).