[Nos. 29150-9-II; 29154-1-II;   Division Two.   March 15, 2005.]
29523-7-II.

THE STATE OF WASHINGTON, *Respondent*, v. HARRY WILLIAM O'NEAL ET AL., *Appellants*.

398

*Harry William O'Neal*, pro se.

*Rebecca W. Bouchey, Peter B. Tiller, Patricia A. Pethick, Stephanie C. Cunningham*, and *Thomas E. Doyle,* for appellants.

*Edward G. Holm, Prosecuting Attorney,* and *Steven C. Sherman, Deputy,* for respondent.

¶1 HOUGHTON, J. — In their consolidated matter, William "Harry" O'Neal, Jesse O'Neal, and Gregory O'Neal appeal convictions of manufacturing methamphetamine. Greg[1] also appeals his convictions of manufacturing marijuana, first degree unlawful possession of a firearm, and possession of a machine gun. The trial court imposed firearm enhancements on both of Greg's manufacturing counts and a firearm enhancement on Harry's and Jesse's methamphetamine manufacturing counts.

¶2 The O'Neals raise multiple assignments of error regarding their convictions and sentences. Because the charging document lacked an essential element, we reverse, without prejudice, Greg's conviction of possession of a machine gun. And because the trial court miscalculated the length of the firearm enhancement on Greg's marijuana count, we reverse and remand that enhancement for resentencing. Otherwise, we affirm.

## FACTS[2]

¶3 On December 4, 2001, the Thurston County SWAT (Special Weapons and Tactics) team and other agencies executed a search warrant at a mobile home owned by Michelle O'Neal. Michelle is Harry's ex-wife and Jesse and Greg's mother. At the time of the search, Greg lived in the home with his friend, Jason Shero. Testimony differed as to whether Jesse and Harry lived in the mobile

---

[1] We use the parties' first names for clarity.

[2] We set forth the facts elicited in pretrial motions and at trial.

home. But Shero testified that he and the O'Neal men lived together in the mobile home.

¶4 Officers obtained the search warrant based on information from two informants, one named and one confidential. When the warrant was executed, Jesse, Harry, and Greg were in the mobile home, but Shero was not.

¶5 During the search, Detective Steve Hamilton found a loaded AR-15 with a chambered round in the open closet of the master bedroom. In a second bedroom, officers located a "suspected marijuana smoking device" and found a knife and a semiautomatic pistol under the mattress. 1 Report of Proceedings (RP) at 44. Officers also discovered a gun safe in the second bedroom. A note taped to the safe was addressed to Shero and signed "G." 1 RP at 49. The safe contained rifles, scopes, and half rifles.

¶6 In the laundry room, officers also found a locked gun safe containing "a large number" of weapons, ammunition, and related items. 1 RP at 60. Finally, the officers found instructions for making methamphetamine.

¶7 On January 17, 2002, the State filed a third amended information charging Jesse with one count of manufacturing methamphetamine with a firearm enhancement and one count of manufacturing marijuana.

¶8 On March 4, 2002, the State filed a third amended information charging Harry with one count of manufacturing methamphetamine and one count of manufacturing marijuana, each with firearm enhancements.

¶9 After several amendments, on July 8, 2002, the State charged Greg with 1 count of manufacturing methamphetamine with a firearm enhancement, 1 count of manufacturing marijuana with a firearm enhancement, 20 counts of first degree unlawful firearm possession, and 1 count of machine gun possession.

¶10 Greg moved to continue his February 11, 2002 trial date. Harry opposed the motion, arguing that delaying the trial would violate his speedy trial rights. The court granted Greg's motion, citing "judicial efficiency and economy" and

the "very strong principle that people . . . should be tried together because of potential for inconsistent decisions." RP (Jan. 18, 2002) at 18.

¶11 Greg sought discovery about the confidential and named informants, which the State declined to provide. Greg moved to compel discovery and requested a *Franks*[3] hearing to determine the search warrant's validity. The court declined to hold a *Franks* hearing[4] or to compel discovery.

¶12 After pleading guilty to manufacturing methamphetamine, Shero testified at the O'Neals' trial. He said that the mobile home contained both a methamphetamine manufacturing laboratory and a marijuana growing operation. He further testified that he and the O'Neals knew about these activities.

¶13 Shero also testified that he observed Greg make methamphetamine while Harry "[stood] watch." 2 RP at 302. Shero initially said that Jesse "really wasn't there," but indicated that Jesse lived in the mobile home at the time Greg was manufacturing methamphetamine. 2 RP at 303. After further questioning, Shero admitted that Jesse "pour[ed] lye into a reaction." 2 RP at 303. Although Shero claimed to own three of the guns, he explained that the AR-15 found in his room belonged to Greg. He also said that Jesse had "a couple shotguns" in one of the safes and that Harry owned a .45 caliber weapon.[5] 2 RP at 305.

¶14 On cross-examination, Shero admitted that he initially implicated only Greg during his interview with Hamilton. Once the detective told him that placing all the

---

[3] *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) (stating that the court must hold an evidentiary hearing when the defendant makes a substantial preliminary showing that the affiant knowingly, intentionally, or with reckless disregard for the truth included in his affidavit a false statement that was necessary to the finding of probable cause).

[4] Jesse and Harry joined in the request, but Jesse does not raise the trial court's denial as an assignment of error on appeal. Like Greg, Harry contends that the trial court erred when it denied the request for a *Franks* hearing.

[5] Although he did not specifically say so, Shero implied that Greg owned the remainder of the guns.

blame on Greg "was not a good plan," Shero said that Jesse and Harry were involved. 2 RP at 337.

¶15  Defense counsel further questioned Shero about his interview with Hamilton:

Q: Was it your impression that Detective Hamilton didn't believe you were telling the truth in the interview?

A: Yes.

Q: Did he suggest to you why he didn't believe you were telling the truth?

. . . .

A: Not that I can recall.

. . . .

Q: After he suggested to you that you weren't telling the truth, did you then tell him something different?

A: Yes.

Q: Why would you tell him something different after you suggested he didn't believe you?

A: Because I wanted—I didn't—I don't know.

2 RP at 355-56.

¶16  In response, the State recalled Hamilton and inquired further about his interview of Shero:

Q: Was there a certain point in that interview where you shared with Mr. Shero your view that he was not providing all the facts as to some of the people that were suspected to be involved in this matter?

A: Yes.

Q: . . . [D]id he make statements which were inconsistent with what he had said earlier after you had that conversation with him?

A: No, he didn't. . . .

Q: And what was it that you were—that you were bringing to his attention when you made this comment?

A: I had previous information which led me to believe that there was [sic] other co-conspirators involved in the crimes.[6]

3 RP at 405.

¶17 After the State rested,[7] Harry and Jesse moved to dismiss their marijuana manufacturing charges based on insufficiency of the evidence.[8] The trial court granted the motions.

¶18 The jury convicted Greg of all counts, finding that he was armed with a firearm during the commission of the two manufacturing counts. The jury convicted Jesse and Harry of manufacturing methamphetamine and found that either they or their accomplices were armed with a firearm.

¶19 At sentencing, the trial court based its calculation on Greg's most serious offense, that being an offender score of 9 and a seriousness level of X.[9] Given these factors, Greg's standard range was 149 to 198 months. The court then imposed consecutive 36-month firearm enhancements on the methamphetamine count, resulting in a total standard range of 221 to 240 months. Under the doubling statute,[10] the court determined that the maximum sen-

---

[6] Defense counsel objected, arguing that any character testimony must be discussed outside the jury's presence.

[7] The trial court heard the motions to dismiss just before the State rested its case. The State's only remaining witness was Hamilton, who the State recalled to testify about his interview with Shero. The court noted, however, that "for the sake of expediency, for all inten[ts and] purposes, this is the point that the State has rested, but for a few details that are not significant in terms of any motion to dismiss." 3 RP at 389.

[8] Jesse and Harry also asked the court to dismiss the firearm enhancement on the manufacture of methamphetamine charge. The trial court denied both motions.

[9] See former RCW 9.94A.510 (Supp. 2000) (sentencing grid); former RCW 9.94A.515 (Supp. 2000) (crimes included within each seriousness level).

[10] The court did not explicitly use RCW 69.50.408, the doubling statute. But under former RCW 69.50.401(a)(1)(ii) (2000), the statutory maximum for manufacture of methamphetamine is 10 years. The court determined that Greg's maximum term for that charge was 20 years and thereby implicitly used the doubling statute.

tence for the methamphetamine count was 240 months.[11] It sentenced Greg to 221 months, a term within his standard range.

¶20 On October 23, 2002, the State moved to amend Greg's judgment and sentence, arguing that the trial court improperly calculated the firearm enhancement. The State asserted that when Greg's statutory maximum sentence on the methamphetamine charge became 20 years under the doubling statute, his firearm enhancement on that count increased to 60 months, the length for 20-year statutory maximum crimes. The court amended the judgment and sentence, imposing a 240-month standard range sentence with 60- and 36-month firearm enhancements on the methamphetamine count.

¶21 Harry, Jesse, and Greg appeal their convictions and sentences on multiple grounds.

## ANALYSIS

### The Trial

### Issues Common to all Appellants

### Detective Hamilton's Testimony Regarding Shero

¶22 In their Statements of Additional Grounds (SAG),[12] the O'Neals contend that the trial court improperly allowed Hamilton to testify as to Shero's veracity.[13] We hold that the trial court acted within its discretion.

---

[11] The trial court did not double the statutory maximum on the marijuana count.

[12] RAP 10.10(a).

[13] Harry asserts this argument in his opening brief. It appears that he also addresses this error in his SAG, where he delineates the following relevant grounds:

Ground 1: Whether Mr. Shero's testimony [was] impeached and not available for use by the Jury in their verdict & was Constitutional Harmful Error.

Ground 2: Whether Shero's testimony in Court was inconsistent with statements he made out-of-court.

■ ¶23 We review a trial court's decision regarding the scope of redirect examination for abuse of discretion. *State v. Gallagher*, 112 Wn. App. 601, 609, 51 P.3d 100 (2002), *review denied*, 148 Wn.2d 1023 (2003). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *Gallagher*, 112 Wn. App. at 609.

■ ■ ¶24 A witness may not give an opinion as to another witness's credibility. *State v. Casteneda-Perez*, 61 Wn. App. 354, 360, 810 P.2d 74, *review denied*, 118 Wn.2d 1007 (1991). Credibility determinations lie within the sole province of the fact finder. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

■ ■ ¶25 Here, the O'Neals opened the door to Hamilton's testimony through their cross-examination of Shero; the cross-examination placed Hamilton's opinion of Shero's veracity at issue.[14] *See Gallagher*, 112 Wn. App. at 609-10 (when defense counsel cross-examined a detective about the lack of drug paraphernalia found at the scene, the trial court properly allowed the State to introduce evidence of syringes found in the home, evidence that was initially excluded by motion in limine). This entitled the State to respond. As the State observes, " 'It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it.' " Resp't's Br. at 25 (quoting *State v. Jones*, 26 Wn.

Ground 3:   Whether Harry O'neal [sic] could be convicted for the crimes charged without Mr. Shero's impeached testimonies. . . .

Ground 4:   Whether Mr. Shero's out-of-court statements were inadmissible due to the inconsistent testimony and statements made at trial.

SAG (Harry) at 12. Although the nature of Harry's pro se arguments is not entirely clear, it appears that grounds 1, 2, and 4 relate to vouching testimony, which we address in this section. Ground 3 appears to go to sufficiency of the evidence, but this argument fails because we do not review the fact finder's credibility determinations on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

[14] Harry also contends that the prosecutor's examination of Hamilton constituted prosecutorial misconduct. Usually, it is improper for a prosecutor to vouch for or against the credibility of a witness. *State v. Horton*, 116 Wn. App. 909, 921, 68 P.3d 1145 (2003). But because we hold that the defense opened the door to the vouching testimony, the prosecutor's actions did not constitute misconduct.

App. 1, 9, 612 P.2d 404, *review denied*, 94 Wn.2d 1013 (1980)). Further, we previously held that "[f]airness dictates that the rules of evidence will allow the opponent to question a witness about a subject matter that the proponent first introduced through the witness." *Gallagher*, 112 Wn. App. at 610. Accordingly, the trial court did not abuse its discretion in allowing the testimony.

Issues Common to Harry and Greg O'Neal

### *Franks* Hearing

¶26 Next, we address whether the trial court erred when it denied Greg's motion for a *Franks* hearing to determine the search warrant's validity. Greg asserts that he "made a preliminary showing that the affiant officer omitted or misrepresented facts in his application for the search warrant, and the facts were material." Appellant's Br. (Greg) at 26. By reference, Harry incorporates the arguments and authorities set forth by Greg.[15]

¶27 We give great deference to a magistrate's determination of probable cause. *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002). At the defendant's request, the court must hold a *Franks* hearing if the defendant makes a preliminary showing that the affiant included a false statement knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to a finding of probable cause. *Franks*, 438 U.S. at 155-56; *Vickers*, 148 Wn.2d at 114 (noting that the misstated information must be material or relevant to the determination of probable cause).

¶28 Here, Hamilton's affidavit for the warrant read, in relevant part:

This [confidential] informant has since been proven to be reliable as well as knowledgeable. Since my conversation with

---

[15] In support of his argument, Harry cites *State v. Casal*, 103 Wn.2d 812, 813, 699 P.2d 1234 (1985) (holding that where a defendant offers information that casts reasonable doubt as to the veracity of material representations by the affiant and the challenged statements are the only basis for probable cause, the court should exercise its discretion to conduct an in camera examination).

this informant I have executed two search warrants based on information that he/she provided. Both of these warrants were successful in the location and seizure of suspected methamphetamine labs. . . . The following portion of this affidavit will show that this confidential informant was at the Oneal [sic] residence on Lawrence Lake [R]oad on 11-07-01 with witness Roger Gore. The informant[']s statement is consistant [sic] with Mr. Gore's statement as to the events that occurred on the 7th day of November 2001. To my knowledge Mr. Gore does not know that confidential informant #116 provided me with a statement as to what occurred on 11-07-2001 at the Oneal [sic] residence. To my knowledge, confidential informant #116 is not aware that Mr. Gore has made a statement in reference to what he observed at the Oneal [sic] residence on 11-07-01. I believe that this information was developed from each person without the other knowing.

Clerk's Papers (CP) (Greg) at 35-36.[16]

¶29 Greg[17] claims that the confidential informant was Carmen Robinson, the girl friend of Roger Gore, the named informant. Hamilton's affidavit indicates that the confidential informant and Gore were present at the O'Neal residence at the same time, so it is certainly possible that they knew one another. The only potential misstatement, then, is Hamilton's assertion that the two informants were not aware of each other's statements. These bare facts do not constitute a preliminary showing that Hamilton knowingly or intentionally made false statements in his search warrant application, or that he acted with reckless disregard for the truth. Hence, the trial court did not err when it denied the motion for a *Franks* hearing.

## Issues Common to Jesse and Harry O'Neal

### Methamphetamine Conviction

¶30 Jesse and Harry contend that insufficient evidence supported their convictions of manufacture of meth-

---

[16] The trial court quoted this language in its oral ruling.

[17] As noted, Harry incorporates Greg's argument by reference.

amphetamine. They assert that the evidence was insufficient to implicate them as accomplices. We disagree.

¶31 In analyzing sufficiency of the evidence, we view facts and inferences in the light most favorable to the State and find evidence sufficient to support a conviction when it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. We need not be convinced of a defendant's guilt beyond a reasonable doubt, only that substantial evidence supports the conviction. *State v. Jacobs*, 121 Wn. App. 669, 680-81, 89 P.3d 232 (2004).

¶32 The State charged Jesse and Harry with one count of manufacture of methamphetamine under a theory of accomplice liability.[18] Under RCW 69.50.401(1), "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance," including methamphetamine. A person is guilty of a substantive crime as an accomplice if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he (i) solicits, commands, encourages, or requests such other person to commit it; or (ii) aids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3).

¶33 The key witness, Shero, implicated both Harry and Jesse as accomplices in the methamphetamine manufacture. Shero testified that all four men lived in the mobile home and knew about the methamphetamine lab. Further, Shero stated that Harry "stood watch" and participated in the manufacture of methamphetamine. 2 RP at 302. Additionally, Shero testified that Jesse "pour[ed] lye into a reaction." 2 RP at 303.

¶34 We leave credibility determinations to the trier of fact and will not disturb them on review. *Camarillo*, 115

---

[18] By amended information, the State charged Harry and Jesse with one count of manufacturing methamphetamine and one count of manufacturing marijuana. As noted, the trial court dismissed the marijuana manufacturing charges based on insufficient evidence.

Wn.2d at 71. Through Shero's testimony, sufficient evidence supports the fact finder's conclusion that Harry and Jesse, with knowledge that their actions would facilitate the manufacture of methamphetamine, aided in such actions. Harry's and Jesse's argument fails.

Greg O'Neal's Appeal

<u>Sufficiency of the Charging Document Regarding Possession of a Machine Gun</u>

¶35 The State charged Greg with one count of possession of a machine gun, contrary to RCW 9.41.190(1). Citing *State v. Anderson*, 141 Wn.2d 357, 5 P.3d 1247 (2000), Greg argues that knowledge is an essential element of the crime, mandating reversal of his conviction. The State offers no authority to counter Greg's assertion that RCW 9.41.190 is violated only by knowing possession. Because, under the following analysis, possession of a machine gun is not a strict liability crime, we dismiss the conviction without prejudice.

¶36 RCW 9.41.190(1) provides:

> It is unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession or under control, any machine gun, short-barreled shotgun, or short-barreled rifle; or any part designed and intended solely and exclusively for use in a machine gun, short-barreled shotgun, or short-barreled rifle, or in converting a weapon into a machine gun, short-barreled shotgun, or short-barreled rifle; or to assemble or repair any machine gun, short-barreled shotgun, or short-barreled rifle.

¶37 It is well established that strict liability crimes are disfavored. *Anderson*, 141 Wn.2d at 366-67.

¶38 In *State v. Warfield*, we examined whether the legislature intended to create a strict liability crime when it

enacted RCW 9.41.190.[19] 119 Wn. App. 871, 875-83, 80 P.3d 625 (2003). After a thorough analysis, we determined that violation of RCW 9.41.190 is not a strict liability crime. *Warfield*, 119 Wn. App. at 883. Although a defendant need not know that the firearm is illegal, he or she must knowingly possess or control the firearm. *Warfield*, 119 Wn. App. at 883; *see also State v. Williams*, 125 Wn. App. 335, 103 P.3d 1289, 1291 (2005). When the defendant has not been adequately apprised of the knowledge element, the remedy is dismissal without prejudice. *Warfield*, 119 Wn. App. at 883-84.

¶39 As such, the question becomes whether the State advised Greg of the element in its charging document. Greg may challenge the constitutional sufficiency of the charging document for the first time on appeal. *State v. Kjorsvik*, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). All essential elements of the crime, both statutory and nonstatutory, must be included in the charging document. *Kjorsvik*, 117 Wn.2d at 97. This informs the defendant of the charges and allows him to present a defense. *Kjorsvik*, 117 Wn.2d at 97. "When the issue is first raised on appeal, the test asks: (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice." *State v. Vangerpen*, 125 Wn.2d 782, 788 n.10, 888 P.2d 1177 (1995).

¶40 Here, the charging document read:

Count XXIII—Possession of a Machine Gun, RCW 9.41.190(1)

In that the defendant, Gregory William Oneal [sic], in the State of Washington, on or about the 4th day of December, 2001, did have in his possession or under his control a machine gun as defined under RCW 9.41.010(7).

CP (Greg) at 64.

---

[19] In *Warfield*, a jury convicted the defendant of possession of an unlawful firearm, to wit, a short-barreled shotgun. 119 Wn. App. at 875. Although Greg was charged with possession of a machine gun, the analysis of RCW 9.41.190 in *Warfield* controls.

■ ¶41 The State argues that the phrase "under his control" substitutes for the word "knowingly." Resp't's Br. at 3. This interpretation is contrary to the holding in *Warfield*, which held that a defendant, "at a minimum, . . . must know that he possesses or controls the firearm." 119 Wn. App. at 883. Control alone is insufficient to trigger criminal liability under RCW 9.41.190.

¶42 Thus, the necessary facts cannot be found in the charging document. Greg need not show prejudice because the element is missing entirely. *Kjorsvik*, 117 Wn.2d at 105-06. Accordingly, we reverse, without prejudice, Greg's conviction for possession of a machine gun.

## Double Jeopardy

¶43 Greg further contends that because RCW 69.50.401 prohibits manufacture of "a controlled substance," rather than specifying a particular substance, his convictions of methamphetamine and marijuana manufacture represent two convictions for the same crime. Because the manufacture of methamphetamine and marijuana differ both in law and in fact, this argument fails.

■ ¶44 The double jeopardy clause of the fifth amendment to the United States Constitution provides, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Washington's Constitution has an analogous clause which reads, "No person shall be . . . twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. The federal and Washington double jeopardy clauses are "identical in thought, substance, and purpose," both protecting against multiple punishments for the same crime. *State v. Schoel*, 54 Wn.2d 388, 391, 341 P.2d 481 (1959).

■ ¶45 When analyzing double jeopardy claims, Washington follows the "same evidence" rule of construction.[20]

---

[20] Our Supreme Court has noted that the "same evidence" test is indistinguishable from the federal *Blockburger* test. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). As set forth by the United States Supreme Court, the *Blockburger* test provides as follows:

*State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). Two crimes consist of the " 'same offense' " when the offenses are identical in law and in fact. *Calle*, 125 Wn.2d at 777 (quoting *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)).

¶46 In *Calle*, the defendant was convicted of second degree rape and first degree incest, based on a single act of intercourse. 125 Wn.2d at 771. The court determined that although the offenses were identical in fact, in that they arose from the same occurrence, they were not identical in law because incest required proof of relationship and rape required proof of force. *Calle*, 125 Wn.2d at 778.

¶47 In essence, Greg urges us to undertake a "unit of prosecution" analysis. He relies on *In re Personal Restraint of Davis*, which ruled that a "separate and distinct" intent to manufacture drugs supports separate units of prosecution for multiple violations of the same statute. 142 Wn.2d 165, 175, 12 P.3d 603 (2000). Greg argues that unlike in *Davis*, intent is not an element of the crime of manufacturing a controlled substance. Thus, he asserts that this court must determine whether there were "two separate and distinct manufacturing operations as evidenced by time or location." Appellant's Br. (Greg) at 19.

¶48 Greg's reliance on *Davis* is misplaced. In *Davis*, the State charged the defendant with two violations of the Uniform Controlled Substances Act, chapter 69.50 RCW, for two marijuana growing operations. 142 Wn.2d at 167. After the *Davis* court engaged in the "unit of prosecution" analysis, it determined that the defendant manifested a "separate and distinct intent" for each count, as evidenced by his "two wholly self-contained grow operations." 142 Wn.2d at 176.

The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of [an additional] fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

¶49 Here, Greg manufactured methamphetamine, contrary to former RCW 69.50.401(a)(1)(ii), and marijuana, contrary to former RCW 69.50.401(a)(1)(iii). The "same evidence" rule is the appropriate method of analysis. These crimes are neither identical in law nor in fact. Accordingly, the jury properly convicted Greg of two distinct crimes and his double jeopardy argument fails.

## Harry O'Neal's Appeal

### Speedy Trial Rights

¶50 Harry argues that the trial court violated his speedy trial rights when it granted codefendant Greg a continuance. We begin our analysis by noting that although Harry objected to the continuance, he did not request severance or identify any prejudice suffered.

¶51 We review a trial court's decision to grant a continuance for abuse of discretion. *State v. McKinzy*, 72 Wn. App. 85, 87, 863 P.2d 594 (1993). On appeal, the defendant must establish both that the court abused its discretion and that he suffered prejudice. *State v. Torres*, 111 Wn. App. 323, 330, 44 P.3d 903 (2002), *review denied*, 148 Wn.2d 1005 (2003). The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997).

¶52 Although a defendant has a constitutional right to a speedy trial, this right does not mandate trial within 60 days. *Torres*, 111 Wn. App. at 330. Former CrR 3.3(a) (2001) charges the court with the responsibility to ensure compliance with its speedy trial requirements.[21]

¶53 Former CrR 3.3(c)(1) provided, in relevant part, "A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of

---

[21] Former CrR 3.3(a) read, "[i]t shall be the responsibility of the court to ensure a trial in accordance with this rule to each person charged with having committed a crime."

arraignment." Harry was arraigned on December 19, 2001. When granting the continuance, the court set a March 4, 2002 trial date, beyond the 60-day window.[22] In setting the date, the court noted that trial may be set beyond one codefendant's 60-day period for "good cause," such as "judicial efficiency and economy" and the "very strong principle that people . . . should be tried together because of potential for inconsistent decisions." RP (Jan. 18, 2002) at 17, 18.

¶54 "When speedy trial and consolidation considerations collide, the court must balance the competing interests." *Torres*, 111 Wn. App. at 332. The general rule is that the trial court should sever cases to protect one defendant's right to a speedy trial. *Torres*, 111 Wn. App. at 332. But the trial court has discretion to proceed with a joint trial, especially if neither defendant claims prejudice. *Torres*, 111 Wn. App. at 332. And before we will overturn a decision to consolidate, the defendant must identify the specific prejudice suffered. *Torres*, 111 Wn. App. at 332.

¶55 Here, Harry argues that the continuance constituted a manifest abuse of discretion because the court could have severed Harry's matter, setting the trial within the speedy trial period. But Harry did not request severance at trial, making his assertion speculative. Further, Harry did not assert prejudice at trial or on appeal. As a result, Harry's argument fails.

### Jury Instruction on Accomplice Liability

¶56 Harry further contends that jury instruction on accomplice liability contained a misstatement of the law. We disagree.

¶57 Jury instruction 16 read, in relevant part:

A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he either:

---

[22] The trial began on July 8, 2002.

(1) solicits, commands, encourages, or requests another person to commit the crime; or

(2) aids or agrees to aid another person in planning or committing the crime.

CP (Harry) at 48.

¶58 Harry asserts that this instruction is identical to the one in *State v. Cronin*, but he misreads that case. 142 Wn.2d 568, 572, 14 P.3d 752 (2000). In *Cronin*, our Supreme Court held that "the fact that a purported accomplice knows that the principal intends to commit 'a crime' does not necessarily mean that accomplice liability attaches for any and all offenses ultimately committed by the principal." 142 Wn.2d at 579. Because the jury instruction permitted the fact finder to find accomplice liability if the defendant knew he was promoting or facilitating "a crime" rather than the specific crime charged, the instruction was deficient. *Cronin*, 142 Wn.2d at 578-79.

¶59 Here, the instructional language at issue in *Cronin* does not exist because instruction 16 referred to "the crime." Instruction 16 did not misstate the law and Harry's argument fails.

## Ineffective Assistance of Counsel

¶60 Harry further contends that he received ineffective assistance of counsel because his attorney failed to argue that his prior convictions constituted the same criminal conduct, resulting in an incorrect offender score.[23] Again, we disagree.

¶61 We give great judicial deference to counsel's performance, according a strong presumption that counsel performed effectively. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984);

---

[23] Harry also contends that he received ineffective assistance of counsel because his attorney proposed a jury instruction on the firearm enhancement statute which did not include the word "knowingly." Because knowledge is not an essential element of the firearm enhancement, Harry's ineffective assistance argument lacks merit.

*State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To prove ineffective assistance of counsel, a defendant must show that his attorney's deficient performance prejudiced him. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Deficient performance occurs when counsel's representation falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Prejudice occurs when, but for the deficient performance, there is a reasonable probability that the outcome would have been different. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).

¶62 Here, Harry has three prior convictions for crimes occurring on the same date. The 1997 court sentenced Harry on one count of second degree assault, one count of second degree kidnapping, and one count of third degree assault while armed with a deadly weapon. The record indicates that the 1997 sentencing court did not believe these crimes constituted the same criminal conduct, but little else. Lacking additional information, we cannot determine whether a same criminal conduct argument would have been successful.

¶63 Thus, based on this scant evidence, Harry fails to establish that counsel's performance was deficient. Accordingly, his claim for ineffective assistance of counsel fails.

## Jesse O'Neal's Appeal

### Prosecutorial Misconduct

¶64 In his SAG, Jesse argues that the State committed prosecutorial misconduct when it argued during closing that " 'they've got binoculars, night scopes. They're well armed, if push comes to shove God forbid,' " because it "misrepresented the evidence and was meant to appeal to the passion and prejudice of the jury." SAG (Jesse) at 5 (quoting 3 RP at 504).

■ ¶65 To establish prosecutorial misconduct, a party must show that the prosecutor's improper conduct caused prejudice in the context of the entire record and circumstances at trial. *State v. Hughes*, 118 Wn. App. 713, 727, 77 P.3d 681 (2003), *review denied*, 151 Wn.2d 1039 (2004). A prosecutor improperly comments when he or she encourages a jury to render a verdict on facts not in evidence. *State v. Stover*, 67 Wn. App. 228, 230-31, 834 P.2d 671 (1992), *review denied*, 120 Wn.2d 1025 (1993). A party establishes prejudice if there is a substantial likelihood that the misconduct affected the verdict. *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996).

■ ¶66 In the present case, the prosecutor recited facts in evidence. The challenged portion of his argument notes the existence of binoculars and night scopes. During trial, the State produced evidence that the O'Neals had binoculars in the home. Jesse notes that the State produced evidence of night goggles, but not night scopes. Given the evidence of numerous weapons in the home, the issue of night scopes as opposed to night goggles unlikely prejudiced Jesse.

¶67 Further, Jesse asserts that the argument " '[t]hey're well armed, if push comes to shove God forbid' " created the impression that the O'Neals resisted arrest. SAG (Jesse) at 5 (quoting 3 RP at 504). Jesse misinterprets the State's argument. The State merely noted that the O'Neals were heavily armed and that this created the potential for a dangerous situation. The facts in evidence support this argument.

¶68 Because the facts in evidence supported the State's closing argument and because Jesse failed to prove prejudice, his prosecutorial misconduct argument fails.

Sentencing

Issues Common to All Appellants

Jury Instructions Regarding the Firearm Enhancement[24]

¶69 Through supplemental briefing, the O'Neals argue that the jury instructions were deficient because they did not require the jury to find a nexus between the firearm, the crime, and the defendant. We disagree.

■ ¶70 "A defendant is 'armed' when he or she is within proximity of an easily and readily available deadly weapon for offensive or defensive purposes and when a nexus is established between the defendant, the weapon, and the crime." *State v. Schelin*, 147 Wn.2d 562, 575-76, 55 P.3d 632 (2002) (plurality opinion). Mere presence of a weapon at the crime scene may be insufficient to establish the nexus between a crime and a weapon. *Schelin*, 147 Wn.2d at 570. When analyzing whether the requisite nexus existed, courts examine the nature of the crime, the type of weapon, and the circumstances under which it is found. *Schelin*, 147 Wn.2d at 570.

¶71 In *State v. Holt*, we held that "as an element of the firearm enhancement, the nexus requirement must be set forth in the jury instructions." 119 Wn. App. 712, 728, 82 P.3d 688 (2004). Jury instructions that do not set forth the nexus requirement "essentially relieve[ ] the State of the burden of proving the nexus beyond a reasonable doubt." *Holt*, 119 Wn. App. at 728.

■ ¶72 But our Supreme Court recently came to a different conclusion in *State v. Willis*, 153 Wn.2d 366, 103 P.3d 1213 (2005). Although the court did not explicitly overrule *Holt*, it held that "[e]xpress 'nexus' language is not required" in the jury instructions. *Willis*, 153 Wn.2d at 374; *see also State v. Barnes*, 153 Wn.2d 378, 383, 103 P.3d 1219, 1222 (2005) (companion case concluding that failure to include express nexus language is not reversible error).

---

[24] The O'Neals raised this issue via supplemental briefing after we filed our opinion in *State v. Holt*, 119 Wn. App. 712, 82 P.3d 688 (2004).

Rather, the instructions are sufficient if they "inform[ ] the jury that it must find a relationship between the defendant, the crime, and the deadly weapon." *Willis*, 153 Wn.2d at 374.

¶73 In *Willis*, the jury instructions provided as follows:

[T]he State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crimes charged in count one . . . and/or count three. . . . [A defendant is armed if the firearm was] readily available for offensive or defensive purposes.

153 Wn.2d at 370-71 (footnote omitted).

¶74 Here, the jury instructions are markedly similar. The relevant instructions are numbers 27 and 28. Jury instruction 27 reads:

For purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a firearm at the time of the commission of the crime of manufacture of a controlled substance.

. . . .

If one participant in a crime is armed with a firearm, all accomplices to that participant are deemed to be so armed, even if only one firearm is involved.

CP (Greg) at 155. Jury instruction 28 provides:

For purposes of the special verdict form, a person is armed with a firearm at the time of the commission of the crime if a firearm is easily accessible and readily available for offensive or defensive use.

CP (Greg) at 156.

¶75 Under *Willis*, these jury instructions are sufficient. With the exception of the additional accomplice language, the instructions here are almost identical to those in *Willis*. In both cases, there is no express nexus language, but the instructions require a relationship between the defendant, the weapon, and the crime. As such, the trial court properly instructed the jury.

¶76 Because *Willis* now controls, the O'Neals' argument fails.

## Sufficiency of the Evidence

¶77 Next, the O'Neals contend that insufficient evidence supports the firearm enhancements. This argument lacks merit.

¶78 In a criminal sufficiency claim, the defendant admits the truth of the State's evidence and all inferences that may be reasonably drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Evidence is sufficient to support a conviction when, viewed in the light most favorable to the State, a rational trier of fact could have found guilt beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201. We defer to the fact finder's resolution of conflicting testimony, witness credibility, and persuasiveness of the evidence. *Camarillo*, 115 Wn.2d at 71.

¶79 As noted above, a defendant is "armed" when he or his accomplice is within proximity of an easily accessible and readily available deadly weapon, for either offensive or defensive purposes. *State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993). Further, the State must establish a nexus "between the defendant (or an accomplice) and the weapon, and the crime." *Schelin*, 147 Wn.2d at 572.

¶80 In *State v. Simonson*, we addressed a similar sufficiency argument. 91 Wn. App. 874, 960 P.2d 955 (1998), *review denied*, 137 Wn.2d 1016 (1999). There, Simonson and his girl friend, Robinson, lived in a silver trailer. *Simonson*, 91 Wn. App. at 876. A green trailer was located on the same parcel of property. *Simonson*, 91 Wn. App. at 877. While Simonson was in jail for an unrelated matter, the green trailer exploded. *Simonson*, 91 Wn. App. at 877. Persons at the scene saw Robinson emerge from the silver trailer, badly burned. *Simonson*, 91 Wn. App. at 877. Minutes later, emergency personnel saw a loaded handgun in the mud outside the green trailer. *Simonson*, 91 Wn. App. at 877. Police believed that it had been recently dropped

because there was no rust or dew on the gun. *Simonson*, 91 Wn. App. at 877.

¶81 On appeal, Simonson claimed that insufficient evidence supported his deadly weapon enhancement. *Simonson*, 91 Wn. App. at 882. We disagreed, holding as follows:

> Taken in the light most favorable to the State, the evidence here shows that Simonson and Robinson were committing a continuing offense, manufacturing methamphetamine, over a six-week period of time. During some or all of that time, they kept seven guns on the premises. It is reasonable to infer that not less than four were kept in a loaded condition, for it is obvious that Robinson did not load them after being burned in the explosion. It is also reasonable to infer that the purpose of so many loaded guns was to defend the manufacturing site in case it was attacked. We conclude that the evidence is sufficient to support the deadly weapon enhancement.

*Simonson*, 91 Wn. App. at 883.

¶82 Here, viewed in the light most favorable to the State, sufficient evidence supports a finding that the O'Neals were "armed." On executing the search warrant, officers found a loaded AR-15 with a chambered round in an open bedroom closet, a weapon both easily accessible and readily available for offensive or defensive use.

¶83 Additionally, there is sufficient evidence of a nexus between the defendants or their accomplices, the weapon, and the crime. Shero testified that all three men lived in the trailer, manufacturing methamphetamine and marijuana for approximately two months. Further, no party disputes that the residence contained more than 20 firearms, night goggles, and body armor, and that some of those firearms were loaded. Shero testified that Greg owned the loaded AR-15 found in the bedroom closet. And, similar to *Simonson*, it is reasonable to infer here that the O'Neals had these numerous weapons (along with night goggles and body armor) to protect the manufacturing site from intrusion. Accordingly, there is sufficient evidence of a nexus

between the defendants or their accomplices, the weapon, and the crime.

¶84 Because there is sufficient evidence that (1) the AR-15 was easily accessible and readily available for offensive or defensive use and (2) a nexus existed between the defendants or their accomplices, the weapon, and the crime, the trial court properly imposed firearm enhancements.

Greg O'Neal's Appeal

Length of the Firearm Enhancement

¶85 Greg asserts that the trial court erred when it calculated the length of his firearm enhancements. He argues that "the classification or statutory maximum of the 'completed felony crime' determines the length of a firearm enhancement[,]" not "the standard range or allowable maximum sentence for each individual defendant." Appellant's Br. (Greg) at 26. Accordingly, he claims that the trial court should have calculated the enhancements based on the statutory maximum, rather than the doubled statutory maximum. We disagree, but reverse and remand for resentencing on other grounds.

¶86 The jury convicted Greg of manufacturing marijuana and methamphetamine, inter alia. RCW 69.50-.401 prohibits the manufacture of methamphetamine and marijuana. The statutory maximum for manufacturing methamphetamine is 10 years. Former RCW 69.50.401(a)(1)(ii) (2000). And the statutory maximum for manufacturing marijuana is five years. Former RCW 69.50.401(a)(1)(iii).

¶87 The trial court imposed firearm enhancements on the two manufacturing counts. Because Greg had a prior conviction for possession of methamphetamine, the trial court employed RCW 69.50.408, the doubling statute.[25] Using this statute, the trial court doubled the statutory maximum on the methamphetamine count. It then calcu-

---

[25] As noted, the trial court did not explicitly utilize the doubling statute.

lated the length of the firearm enhancement based on the new term, imposing a 60-month enhancement.

¶88 The trial court did not, however, double the maximum on the marijuana count. It imposed a 36-month firearm enhancement based on the marijuana conviction, a term generally reserved for class B felonies or crimes with statutory maximums of 10 years. Former RCW 9.94A.510(3)(b) (Supp. 2000).

¶89 Our analysis involves the relationship between RCW 69.50.408 and former RCW 9.94A.510. Neither party cites authority explaining the interaction of these statutes. Nor does our review find such authority. There is, however, case law discussing similar doubling statutes and their effect on sentencing enhancements.

¶90 In *State v. Barajas*, Division Three analyzed RCW 69.50.435, the school zone enhancement. 88 Wn. App. 387, 388, 960 P.2d 940 (1997), *review denied*, 134 Wn.2d 1026 (1998). Barajas appealed his conviction of possession of a controlled substance with intent to deliver within 1,000 feet of a school bus stop. *Barajas*, 88 Wn. App. at 388. The statutory maximum for this crime was 10 years. *Barajas*, 88 Wn. App. at 388. Under RCW 69.50.435, possession of a controlled substance with intent to deliver in a school zone was punishable " 'by imprisonment of up to twice the imprisonment otherwise authorized by this chapter [RCW 69.50].' " *Barajas*, 88 Wn. App. at 388 (quoting RCW 69.50.435). Using this provision, the trial court doubled Barajas' sentence to 20 years. *Barajas*, 88 Wn. App. at 388-89. When imposing the sentence, the trial court based the length of the enhancement on the doubled term. *Barajas*, 88 Wn. App. at 389.

¶91 Division Three concluded that the school zone enhancement resulted in a new maximum sentence. *Barajas*, 88 Wn. App. at 389. By its own terms, the school zone doubling statute increased the otherwise maximum penalty. *Barajas*, 88 Wn. App. at 389. Accordingly, the court affirmed the trial court's imposition of a five-year deadly weapon enhancement. *Barajas*, 88 Wn. App. at 389.

¶92 Recently, we followed *Barajas* in *State v. Blade*, 126 Wn. App. 174, 107 P.3d 775 (2005). There, a jury convicted Blade of manufacturing methamphetamine with school bus zone and firearm enhancements. *Blade*, 126 Wn. App. at 178. Similar to the facts in *Barajas*, the school zone enhancement allowed punishment " 'up to twice the imprisonment otherwise authorized by [chapter 69.50 RCW].' " *Blade*, 126 Wn. App. at 179 (quoting RCW 69.50.435(a)(3)). Using the definition of "statutory maximum sentence," we held that the school zone doubling provision created a new maximum penalty. *Blade*, 126 Wn. App. at 180.

¶93 Although this case involves RCW 69.50.408, the language is similar to that of the school zone enhancement. RCW 69.50.408(a) provides that "[a]ny person convicted of a second or subsequent offense under . . . [chapter 69.50 RCW] may be imprisoned for a term up to twice the term otherwise authorized." Governing the length of firearm enhancements, former RCW 9.94A.510 provides in pertinent part:

(3) The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime. . . . .

(a) Five years for any felony defined under any law as a class A felony or with a statutory maximum sentence of at least twenty years, or both . . . .

(b) Three years for any felony defined under any law as a class B felony or with a statutory maximum sentence of ten years, or both . . . .

(c) Eighteen months for any felony defined under any law as a class C felony or with a statutory maximum sentence of five years, or both.

¶94 Like the school zone enhancement, the drug doubling statute creates a new statutory maximum. The definition of "statutory maximum sentence" supports this conclusion. RCW 9.94A.030(41) defines "statutory maximum sentence" as "the maximum length of time for which an offender may be confined as punishment for a crime as prescribed in . . . the statute defining the crime, or other statute defining the maximum penalty for a crime." RCW 69.50.408 doubles the maximum length of time for which the offender may be confined, thereby defining a new statutory maximum.[26]

¶95 Here, the trial court properly calculated the length of the 60-month firearm enhancement. Under the doubling statute, Greg's maximum sentence on the methamphetamine count was 20 years. Former RCW 69.50.401(a)(1)(ii); RCW 69.50.408. Accordingly, the trial court correctly imposed a 60-month firearm enhancement for the methamphetamine count. Former RCW 9.94A.510(3)(a).

¶96 But the trial court erred when it imposed the 36-month firearm enhancement for the marijuana count. Former RCW 69.50.401(a)(1)(iii). As noted, the statutory maximum sentence for the manufacture of marijuana is five years. A trial court has discretion to utilize the doubling provision of RCW 69.50.408.[27] *State v. Mayer*, 120 Wn. App. 720, 727, 86 P.3d 217 (2004). Exercising this discretion, the

---

[26] As we noted in *State v. Clark*, RCW 69.50.408 doubles the statutory maximum but not the offender's standard range. 123 Wn. App. 515, 521, 94 P.3d 335 (2004).

[27] There is a division split on this issue. Divisions Two and Three have determined that RCW 69.50.408 is discretionary. *State v. Cameron*, 80 Wn. App. 374, 380, 909 P.2d 309 (1996) (Division Two opinion noting, without deciding, that the statute involved "a measure of judicial discretion"); *Mayer*, 120 Wn. App. at 727 (Division Three opinion holding that under the plain language of the statute, the trial court had discretion to double a fine). In contrast, Division One held that the statute "is neither discretionary nor a sentence enhancement." *In re Pers. Restraint of Hopkins*, 89 Wn. App. 198, 203, 948 P.2d 394 (1997), *rev'd on other grounds*, 137 Wn.2d 897, 976 P.2d 616 (1999). Rather, its application is automatic when the offender's criminal history and current conviction satisfy the terms of the statute, *Hopkins*, 89 Wn. App. at 201, which, on review, our Supreme Court reversed on other grounds. *Hopkins*, 137 Wn.2d 897. The court noted that because of its disposition, it need not address Division One's characterization of the statute. *Hopkins*, 137 Wn.2d at 900 n.2.

trial court did not double the maximum on the marijuana count. In its order amending the judgment and sentence, however, the trial court imposed a 36-month enhancement for the marijuana charge.[28] But when the crime has a statutory maximum of five years, the trial court adds 18 months to the offender's sentence. Former RCW 9.94A-.510(3)(c). The trial court incorrectly imposed the 36-month firearm enhancement.

¶97 Thus, we remand for resentencing.

### Harry O'Neal's Appeal

### Knowledge as an Essential Element

¶98 Harry assigns error to the charging document and jury instructions, arguing that knowledge is an essential element of the firearm enhancement statute. We disagree.

¶99 Our Supreme Court recently analyzed whether knowledge is an essential element of a deadly weapon allegation. *Barnes*, 153 Wn.2d at 386-87. There, officers arrested Barnes on suspicion of driving under the influence of drugs. *Barnes*, 153 Wn.2d at 380. During a search incident to arrest, officers found an unloaded handgun under the driver's seat. *Barnes*, 153 Wn.2d at 380. Barnes denied ownership of the handgun, and he also denied knowledge of its presence in the vehicle. *Barnes*, 153 Wn.2d at 380. After obtaining a search warrant for the trunk, officers found two containers of methamphetamine and other items. *Barnes*, 153 Wn.2d at 380-81. The jury convicted Barnes of possession of a controlled substance with intent to manufacture or deliver, inter alia, making a special finding that he was armed with a firearm during commission of the offense. *Barnes*, 153 Wn.2d at 381.

¶100 On appeal, Barnes argued that the State must prove that he knew of the firearm's presence for

---

[28] When the trial court imposed a 36-month firearm enhancement, it effectively created an exceptional sentence. Because we remand for resentencing, we do not address the exceptional sentence.

purposes of the firearm enhancement. *Barnes*, 153 Wn.2d at 381-82. The court disagreed, holding that "while knowledge may be a factor for the jury to consider in deciding whether there is a connection between the defendant, the crime, and the weapon, it is not a requirement that must be contained in jury instructions relating to a firearm enhancement." *Barnes*, 153 Wn.2d at 386-87.

¶101 Here, Harry's claim is foreclosed by *Barnes*. Because knowledge is not an essential element of the firearm enhancement, the State need not prove that Harry knew of the firearm's presence. Thus, the charging document and jury instructions were proper.

## Calculation of Harry's Offender Score

¶102 Harry also contends that the trial court incorrectly calculated his offender score because three prior convictions constituted the same criminal conduct. While admitting that he did not contest his offender score below, Harry argues that he can raise the issue for the first time on appeal. We disagree.

¶103 Harry's judgment and sentence lists three prior convictions in his criminal history: (1) second degree assault, (2) third degree assault, and (3) second degree kidnapping.[29] Harry committed these crimes on March 2, 1997.[30] After Harry pleaded guilty, the trial court imposed a sentence for all three crimes on May 23, 1997. It did not find that these crimes constituted the same criminal conduct.

¶104 For the first time on appeal, Harry contends that these three crimes encompassed the same criminal conduct. RCW 9.94A.589 defines the parameters of the same criminal conduct test. It provides, in relevant part: "[I]f the court

---

[29] The judgment and sentence for these prior crimes indicates that Harry committed third degree assault while armed with a deadly weapon.

[30] The 2002 judgment and sentence states that Harry committed second degree assault and second degree kidnapping on March 2, 1997, and third degree assault on March 10, 1997. Given that the 1997 judgment and sentence provides that all three crimes were committed on March 2, 1997, this appears to be a clerical error.

enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." RCW 9.94A-.589(1)(a). For offender score purposes, multiple crimes encompass the same criminal conduct when they involve the same objective criminal intent, the same victim, and the same time and place. *State v. Nitsch*, 100 Wn. App. 512, 521, 997 P.2d 1000, *review denied*, 141 Wn.2d 1030 (2000); RCW 9.94A.589(1)(a). Failure to meet any one element precludes a finding of the same criminal conduct. *State v. Morris*, 123 Wn. App. 467, 475, 98 P.3d 513, 517 (2004).

¶105 As noted, Harry did not contest his offender score or standard range below. Generally, a defendant cannot waive a challenge to a miscalculated offender score. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). When the sentencing error is a legal one, the waiver doctrine does not apply. *Goodwin*, 146 Wn.2d at 874. As a threshold matter on appeal, however, the defendant must show the existence of an error of fact or law "within the four corners of his judgment and sentence." *State v. Ross*, 152 Wn.2d 220, 231, 95 P.3d 1225 (2004).

¶106 But a defendant may waive a miscalculated offender score if the alleged error involves an agreement to facts, later disputed, or a matter of trial court discretion. *Goodwin*, 146 Wn.2d at 874. "Application of the same criminal conduct statute involves both factual determinations and the exercise of discretion." *Nitsch*, 100 Wn. App. at 523.

¶107 The *Goodwin* court cited *Nitsch* with approval, noting that the Court of Appeals properly found waiver. *Goodwin*, 146 Wn.2d at 875. In *Nitsch*, the defendant entered an *Alford*[31] plea of guilty to first degree burglary and first degree assault. *Nitsch*, 100 Wn. App. at 517. In the presentence report, Nitsch alleged a standard range identical to that calculated by the State. *Nitsch*, 100 Wn. App. at

---

[31] *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

522. At sentencing, Nitsch and the State both agreed to the calculation of his standard range. *Nitsch*, 100 Wn. App. at 517. For the first time on appeal, Nitsch argued that his two convictions constituted the same criminal conduct. *Nitsch*, 100 Wn. App. at 514.

¶108 The Court of Appeals noted that Nitsch did not merely remain silent but instead affirmatively acknowledged his standard range, thereby implicitly asserting that his crimes did not constitute the same criminal conduct. *Nitsch*, 100 Wn. App. at 522. Because Nitsch agreed to the calculation of his standard range, the court held that he waived review of the issue. *Nitsch*, 100 Wn. App. at 514.

■■■ ¶109 Here, Harry's counsel affirmatively acknowledged the calculation of his offender score, and thus Harry waived this issue on appeal. At sentencing, the trial court specifically asked whether Harry contested his standard range:

> THE COURT: Has counsel for the defendants had a chance to see the criminal history and the sentencing ranges that [the prosecutor] has handed to the Court?
>
> [JESSE'S COUNSEL]: I'm sure I'll agree.
>
> THE COURT: *I want you to verify this is not a contested issue. That is the sentencing ranges.*
>
> [HARRY'S COUNSEL]: I've looked at it. I have no objection to it.
>
> THE COURT: Thank you.
>
> [HARRY'S COUNSEL]: I believe it's accurate.
>
> . . . .
>
> THE COURT: For Harry O'Neal[, the] standard . . . range is at least 103 in prison, but more not [sic] than 125, but apparently the max is 120.

5 RP (Sentencing for Harry and Jesse) at 593 (emphasis added). Harry's counsel then went on, asking the court to impose a sentence of 103 months, the low end of the standard range. Like the defendant in *Nitsch*, Harry affirmatively acknowledged the calculation of his standard range, indicating that his prior convictions did not consti-

tute the same criminal conduct.[32] Accordingly, Harry has waived this issue on appeal.

### Cumulative Error

¶110 Finally, Harry claims that he is entitled to relief under the cumulative error doctrine. SAG (Harry) at 12. We disagree.

¶111 The cumulative error doctrine applies when several errors occurred at the trial court level, but none alone warrants reversal. *State v. Hodges*, 118 Wn. App. 668, 673, 77 P.3d 375 (2003). Instead, the combined errors effectively denied the defendant a fair trial. *Hodges*, 118 Wn. App. at 673-74. But "[a]bsent prejudicial error, there can be no cumulative error that deprived the defendant of a fair trial." *State v. Saunders*, 120 Wn. App. 800, 826, 86 P.3d 232 (2004).

¶112 With respect to Harry, we have not found any prejudicial error. As such, his argument fails.

### CONCLUSION

¶113 In sum, we reverse, without prejudice, Greg's conviction of machine gun possession. We affirm Greg's convictions of manufacturing methamphetamine, manufacturing marijuana, and first degree unlawful possession of a firearm. We affirm Harry's and Jesse's convictions of manufacturing methamphetamine. We affirm Harry's and Jesse's firearm enhancements. We affirm Greg's 60-month enhancement on the methamphetamine count. Finally, we remand for resentencing Greg's 36-month enhancement on the marijuana count.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.

Review granted at 155 Wn.2d 1024 (2005).

---

[32] Even if we did not find waiver, there is insufficient evidence in the record to find that Harry's prior crimes encompassed the same criminal conduct. While the 1997 judgment and sentence states that all three crimes occurred on the same day, the record provides no other information about these crimes. We cannot ascertain the victim, the time and place of the crimes, and whether one crime furthered another. As such, Harry's claim would also fail on the merits.