[No. 25222-8-II.   Division Two.   July 26, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. DENNIS DESALES GALLAGHER, *Appellant*.

602

*Thomas E. Doyle*, for respondent (appointed counsel for appeal).

*Edward G. Holm, Prosecuting Attorney*, and *David M. Soukup, Deputy*, for respondent.

HOUGHTON, J. — Dennis Desales Gallagher appeals his conviction of unlawful manufacture of methamphetamine. He argues that the trial court erred in various evidentiary rulings, in instructing the jury, and in imposing community placement without a specific duration. He also argues that he was denied effective assistance of counsel and that there was insufficient evidence to support his conviction as an accomplice. We affirm the conviction, but remand with instructions to amend the community placement portion of the sentence.

## FACTS

On November 13, 1998, Detective Chris Edin of the Thurston County Sheriff's Office arrived at Gallagher and Dorothy Bennett's residence. Detective Edin believed that Jason Slinker also lived there. There was an outstanding felony arrest warrant for Slinker.

While executing on the warrant, Detective Edin observed several items in Slinker's bedroom that he suspected were used in the manufacture of methamphetamine, including a "frying pan or hot plate" and a propane tank or torch. 1 Report of Proceedings (RP) at 48. Following department protocol, he stopped his activities and he contacted the Thurston County Narcotics Task Force to handle the matter.

Detective John Snaza of the Thurston County Narcotics Task Force responded to Detective Edin's call. When Detective Snaza arrived at the house that day, he noticed a strong, solvent-type odor in the home. Detective Snaza recognized the odor as similar to ones he had encountered on his previous investigations of methamphetamine labs. He also noticed a large fan running in the master bedroom, although November 13 was not a hot day.

In Slinker's bedroom,[1] the detectives found evidence of methamphetamine manufacturing, including two Pyrex plates with a brown liquid solution, a small butane or propane tank, stained coffee filters, a spatula, a pie plate with a liquid solution, an electric skillet with a small amount of liquid solution, a blender, and a one-gallon can of denatured alcohol.

In the bathroom adjacent to Gallagher and Bennett's master bedroom, the detectives found a can of acetone and a one-quart glass vinegar jar with brown liquid inside and a hose emerging from the top. Gallagher's fingerprints were found on the can of denatured alcohol from Slinker's room and on the glass vinegar jar found in the bathroom adjacent to the master bedroom.

State Crime Lab tests confirmed that items taken from the house contained pseudoephedrine. At trial, Crime Lab Forensic Scientist Frank Boshears testified that the items found in the bedroom were those used to extract pseudoephedrine from cold tablets in order to manufacture methamphetamine. He also testified that denatured alcohol may be used to extract pseudoephedrine from cold tablets and that the glass vinegar bottle with the tube and the brown liquid were a hydrochloric acid gas generator.[2]

The State charged Gallagher with unlawful manufacture of a controlled substance, methamphetamine (count I), and reckless endangerment (count II).[3]

Before trial, the court granted Gallagher's motion in limine to exclude evidence of used and unused hypodermic syringes found in the master bedroom and adjacent bathroom. During cross-examination of Detective Snaza, defense counsel inquired about the lack of various drug-

---

[1] Gallagher and Bennett rented the three-bedroom house. The bedroom that Slinker occasionally occupied was actually the room of Bennett's then 19-year-old daughter, who sometimes lived there.

[2] Illegal drug manufacturers use hydrochloric acid gas generators in the final step of manufacturing methamphetamine to convert the methamphetamine from a liquid solution to a usable solid form.

[3] The State later dismissed count II.

related items. The State then asked the trial court to allow questioning about the syringes on redirect examination to refute Gallagher's implication that there was no evidence of any drug activities in the house. The trial court ruled that defense counsel had opened the door to this line of questioning and allowed the State to introduce syringe evidence. Gallagher then proposed a limiting instruction, but the court declined, indicating that it would constitute a comment on the evidence.

The State pursued its case on the theory of accomplice liability.[4] Both the State and Gallagher submitted accomplice liability jury instructions based on 11 *Washington Pattern Jury Instructions: Criminal* 10.51 (2d ed. 1994) (WPIC).

The jury found Gallagher guilty as an accomplice of manufacturing methamphetamine. At Gallagher's October 22, 1999 sentencing, the trial court imposed a sentence of 75 months' confinement, community placement "for the period of time provided by law,"[5] and various other fines and conditions.

Gallagher appeals his conviction and sentence.

## ANALYSIS

### Accomplice Liability Instruction

Gallagher first contends that the trial court committed reversible error in giving an accomplice liability jury instruction that was later found to be defective. The State

---

[4] Slinker had already pleaded guilty to manufacturing methamphetamine. He testified on Gallagher's behalf at trial. He admitted that he was the primary actor. He admitted that he used denatured alcohol in the extraction process. But he denied that Gallagher assisted him in manufacturing methamphetamine.

[5] At sentencing, the trial court orally imposed a one-year community placement, but the written sentence and judgment does not reflect this limitation.

counters that Gallagher invited the error by requesting the same instruction.[6]

■ Our Supreme Court recently rejected the WPIC 10.51 accomplice liability instruction because it relieves the State of proving an essential element, namely that the defendant knew he was aiding in the commission of the charged crime. *See State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000) (to be an accomplice, the person must have acted with knowledge that he was promoting or facilitating *the* crime for which he was eventually charged). Thus, the accomplice liability instruction was in error because it merely required the State to prove that Gallagher knew he was aiding someone (presumably Slinker) in planning or committing any crime, not the crime of unlawfully manufacturing methamphetamine.

This instructional error is presumed prejudicial unless it affirmatively appears to be harmless. *State v. Stein*, 144 Wn.2d 236, 246, 27 P.3d 184 (2001); *State v. Jennings*, 111 Wn. App. 54, 63-64, 44 P.3d 1 (2002) (adopting *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). The possible harm of a defective accomplice liability instruction is that the jury would convict based on the defendant's knowledge that the defendant's actions would promote a crime different from the crime charged. *Stein*, 144 Wn.2d at 246; *Cronin*, 142 Wn.2d at 580-82.

That possible harm did not exist here. The only crime at issue was manufacturing methamphetamine. Thus, the faulty instruction would not have misled the jury or relieved the State of its burden of proving all of the elements of the crime. The error here was harmless beyond a reasonable doubt. *See State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996) (constitutional error harmless if reviewing

---

[6] The concurrence would decide this matter on invited error grounds. But we recently adopted a constitutional harmless error analysis regarding a missing element in the jury instruction. *State v. Jennings*, 111 Wn. App. 54, 64, 44 P.3d 1 (2002) (error in omitting an element from a jury instruction or misstating an element in the jury instruction may be harmless (adopting *Neder v. United States*, 527 U.S. 1, 18, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999))). Thus, we find it unnecessary to discuss invited error here.

court concludes beyond a reasonable doubt that any reasonable jury would reach the same result absent the error); *see also Neder*, 527 U.S. at 9.

## Evidentiary Error

### *Drug-Related Items*

Gallagher next contends that the trial court erred in allowing the State to introduce syringe evidence in violation of its order in limine. He asserts that defense counsel's cross-examination of Detective Snaza did not open the door to admission of this evidence.

■■ A trial court's decision as to the scope of redirect examination and whether to admit or exclude evidence is within its wide discretion, and we will not reverse absent a manifest abuse of that discretion. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001); *State v. Gould*, 58 Wn. App. 175, 186, 791 P.2d 569 (1990). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998).

The trial court granted Gallagher's motion in limine to exclude evidence of the used and unused syringes found in the master bedroom and adjacent bathroom. The State abided by this ruling until after defense counsel cross-examined Detective Snaza about the lack of items associated with drugs found at the house such as a large amount of cash, receipts for sales of drugs, names of sources, weapons, pagers, baggies or packing materials, "cutting agents," etc. 2 RP at 209.

The State asked that the court allow it to introduce the syringe evidence on redirect examination to refute the defense implication that there was nothing in the house indicating that drug-related activities had taken place. The trial court granted the State's request on grounds that the defense had opened the door to this line of questioning.

■ The trial court did not abuse its discretion in allowing the State to introduce this evidence. Fairness dictates that the rules of evidence will allow the opponent to question a witness about a subject matter that the proponent first introduced through the witness. *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969). Here, if the State had not been allowed to ask Detective Snaza on redirect examination about the evidence found in the master bedroom and adjacent bathroom, Gallagher would have succeeded in painting a false picture that no drug-related activities took place in the home.

Gallagher cites *State v. Stockton*, 91 Wn. App. 35, 955 P.2d 805 (1998) and *State v. Avendano-Lopez*, 79 Wn. App. 706, 904 P.2d 324 (1995), *review denied*, 129 Wn.2d 1007 (1996), to support his argument. This reliance is misplaced. These cases involved witnesses who made only passing references to prohibited topics. On direct examination in *Avendano-Lopez*, the defendant's answer that he had been released from jail did not open the door to allow the State to question him about his prior misconduct. *Avendano-Lopez*, 79 Wn. App. at 714-15. Likewise, in *Stockton*, the defendant's testimony on direct that he thought some men were trying to sell him drugs did not open the door to allow the State to question him about his prior drug use. *Stockton*, 91 Wn. App. at 40.

Here, although Gallagher did not question Detective Snaza about the existence of the syringes, he took advantage of Detective Snaza's inability to talk about the syringes (because of the order in limine) to convey to the jury the false image that the home was devoid of drug-related activities. The trial court did not allow this unfair advantage to occur. Gallagher's argument fails.

*Refusal to Give a Limiting Instruction*

■■ Gallagher also contends that the trial court erred in refusing to give his proposed limiting instruction regard-

ing the purpose of the syringe evidence.[7] A trial court must give a limiting instruction where evidence is admitted for one purpose but not for another and the party against whom the evidence is admitted requests the trial court give the instruction. ER 105; *State v. Aaron*, 57 Wn. App. 277, 281, 787 P.2d 949 (1990).

Here, the syringe evidence was admitted for the limited purpose of preventing Gallagher from arguing that no drug activities took place in his home. Although the trial court declined to give the limiting instruction requested by Gallagher, it nevertheless instructed the State that it could not use the syringe evidence to argue that Gallagher cooperated with Slinker in the production of methamphetamine, or to show Gallagher had notice of Slinker's activities. The trial court did not abuse its broad discretion in declining to give Gallagher's proposed instruction and instead fashioning its own limitation on the use of the evidence. It was well within its broad discretion in doing so. *State v. Ramirez*, 62 Wn. App. 301, 305, 814 P.2d 227 (1991) (a trial court's ruling on the propriety of a limiting instruction is reviewed for abuse of discretion), *review denied*, 118 Wn.2d 1010 (1992).

## Effective Assistance of Counsel

### *Standard of Review*

To establish ineffective assistance of counsel, a defendant must demonstrate both that his or her counsel's representation was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The reviewing court indulges in a strong presumption that counsel's representation falls within the wide range of proper professional assistance. *State v. Lord*, 117 Wn.2d

---

[7] Gallagher asserts the syringe was inadmissible propensity evidence, which violated ER 404(b) because its admission was "tantamount to arguing that since Gallagher was a drug user . . . he was more likely to have committed the crime of drug manufacturing." Appellant's Br. at 16.

829, 883, 822 P.2d 177 (1991). To overcome this presumption, the defendant must show that counsel had no legitimate strategic or tactical rationale for his or her conduct. *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). To establish prejudice, the defendant must show that but for counsel's deficient performance, the result would have been different. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

## Accomplice Liability Instruction

Gallagher contends that he was denied effective assistance of counsel because his trial counsel requested the defective accomplice liability jury instruction.

Because we hold that the instructional error was harmless, we do not address Gallagher's argument.

## Opening the Door to Evidence

Gallagher also contends that his counsel provided ineffective assistance when he opened the door to the State's introducing the syringe evidence.

A party bringing an ineffective assistance of counsel claim must show that the attorney's conduct was not due to legitimate trial strategy or tactics. *State v. Summers*, 107 Wn. App. 373, 382, 28 P.3d 780, 43 P.3d 526 (2001) (citing *McFarland*, 127 Wn.2d at 336). The record indicates that defense counsel's purpose for cross-examining Detective Snaza at length about the lack of various drug-related items in Gallagher's house was an attempt to portray a house devoid of any drug-related activities. If the State were not allowed to refute this false impression, defense counsel could have bolstered his argument about Gallagher's innocence. Because counsel's purpose was tactical, Gallagher's argument fails.

Sufficiency of the Evidence

██ ██ Gallagher further contends that there was insufficient evidence to support his conviction under an accomplice liability theory. When reviewing a conviction for sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Bencivenga*, 137 Wn.2d 703, 706, 974 P.2d 832 (1999). A defendant's claim of insufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence must be drawn in favor of the State and most strongly against the defendant. *Salinas*, 119 Wn.2d at 201. No distinction exists between circumstantial evidence and direct evidence as both are equally reliable. *Bencivenga*, 137 Wn.2d at 711; *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

██ In determining whether the necessary quantum of proof exists, we need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case. *Summers*, 107 Wn. App. at 388 (citing *State v. Fiser*, 99 Wn. App. 714, 718, 995 P.2d 107, *review denied*, 141 Wn.2d 1023 (2000)). Substantial evidence is evidence that " 'would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed.' " *Summers*, 107 Wn. App. at 388 (quoting *State v. Hutton*, 7 Wn. App. 726, 728, 502 P.2d 1037 (1972)).

██ To be found guilty as an accomplice, the State had to show that Gallagher aided Slinker in his manufacturing endeavors. RCW 9A.08.020(3)(a)(ii) ("A person is an accomplice of another person in the commission of a crime if . . . [w]ith knowledge that it will promote or facilitate the commission of the crime, he . . . aids or agrees to aid such other person in planning or committing it[.]"). In other

words, if Gallagher associated with the criminal venture and participated in it expecting success, he could be found guilty as an accomplice. *State v. Roberts*, 80 Wn. App. 342, 355-56, 908 P.2d 892 (1996); *State v. Luna*, 71 Wn. App. 755, 759, 862 P.2d 620 (1993).

██ Here, there was both direct and circumstantial evidence of Gallagher's complicity. Gallagher allowed Slinker to live in the house rent free. Slinker admitted that he manufactured methamphetamine. Slinker testified that neither Gallagher nor Bennett assisted him or even were aware of his activities. But the jury was free to disbelieve Slinker. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The house was filled with a solvent-type odor associated with criminal drug manufacturing. There was a large fan operating on a cold November day. Gallagher had to know that illegal drug manufacturing was taking place.

Finally, Gallagher's fingerprints were found on a can of denatured alcohol in Slinker's bedroom and on the hydrochloric acid gas generator found in Gallagher's bathroom. These two items are critical to the manufacturing of methamphetamine. All this evidence supports the jury's conclusion that Gallagher was involved in the process of manufacturing methamphetamine, either personally, or by knowingly giving aid or assistance to Slinker. There was substantial evidence for a jury to find Gallagher guilty as an accomplice.

## Community Placement

Finally, Gallagher contends that the trial court erred in not specifying a one-year community placement duration as part of his sentence. We agree.

██ Although the trial court orally imposed a one-year period of community placement, the written judgment and sentence states that the community placement is "for the period of time provided by law." RP (Oct. 29, 1999) at 20.

The State concedes this was error.[8] The proper remedy where the trial court fails to sufficiently specify the duration of a defendant's community placement is to remand for the trial court to amend the judgment and sentence to reflect the correct period of community placement. *State v. Broadaway*, 133 Wn.2d 118, 136, 942 P.2d 363 (1997); *see State v. Nelson*, 100 Wn. App. 226, 228-29, 996 P.2d 651 (2000).

The conviction is affirmed. That portion of the judgment and sentence setting community placement "for the period of time provided by law" is vacated. The matter is remanded for resentencing in accordance with this opinion.

MORGAN, J., concurs.

QUINN-BRINTNALL, A.C.J. (concurring in the result) — At trial Gallagher's counsel requested that the court give the 11 *Washington Pattern Jury Instructions: Criminal* 10.51 (2d ed. 1994) (WPIC) accomplice liability instruction he now challenges on appeal. Because he invited the error of which he now complains and because it was not ineffective assistance for his trial counsel to request a pattern instruction not yet disapproved by the court, I would decide this case on invited error grounds.

A defendant is precluded from challenging an instruction he proposed:

> "*The instruction given is one which the defendant himself proposed. A party may not request an instruction and later complain on appeal that the requested instruction was given.* Ball v. Smith, 87 Wn.2d 717, 556 P.2d 936 (1976); Vangemert v. McCalmon, 68 Wn.2d 618, 414 P.2d 617 (1966). The defendant's challenge to the instruction must therefore fail."

---

[8] The applicable sentencing statute specifically mandates a one-year period of community placement as part of the sentence: "[T]he court shall in addition to the other terms of the sentence, sentence the offender to a one-year term of community placement[.]" Former RCW 9.94A.120(9)(a) (1998).

*State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990) (quoting *State v. Boyer*, 91 Wn.2d 342, 345, 588 P.2d 1151 (1979)) (emphasis added by *Henderson* court).

This has been the law for more than 20 years. *See, e.g.*, *Boyer*, 91 Wn.2d 342 (a unanimous decision of our Supreme Court). Gallagher is precluded from challenging the court's giving of the accomplice liability instruction he proposed.

Nor may Gallagher circumvent this longstanding rule (that a party may not request an instruction and later complain on appeal that the requested instruction was given) by asserting that his counsel was ineffective in requesting that the court give the pattern jury instruction. In *State v. Summers*, 107 Wn. App. 373, 380-82, 28 P.3d 780, 43 P.3d 526 (2001), the defendant advanced virtually identical arguments in challenging his conviction for unlawful possession of a firearm under a jury instruction that was previously held defective in *State v. Anderson*, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000).[9] This court rejected Summers's claim as invited error, explaining that

> [r]epresentation is deemed constitutionally sufficient unless (1) considering all the circumstances, the attorney's performance was below objective standards of reasonableness, and (2) with reasonable probability, the outcome would have differed if the attorney had performed adequately. *State v. Stenson*, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)), *cert. denied*, 523 U.S. 1008 (1998). . . .
>
> In [*State v.*] *Studd*[, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999)], the defendant also claimed that his attorney was ineffective for proposing a flawed self defense instruction. At the time of trial, however, case law held that the proposed self defense instruction was constitutional. Thus, our Supreme Court rejected this claim because "[trial] counsel can hardly be

---

[9] In *Anderson*, our Supreme Court held that knowledge was a nonstatutory element of the crime of unlawful possession of a firearm; therefore a to-convict instruction that failed to require the jury find knowledge was defective. 141 Wn.2d at 366-67.

faulted for requesting a jury instruction based upon a then-unquestioned WPIC 16.02." *Studd,* 137 Wn.2d at 551.

*Summers,* 107 Wn. App. at 382.

Likewise, Gallagher's counsel cannot be said to have rendered deficient representation by requesting WPIC 10.51 before the Supreme Court issued *State v. Cronin,* 142 Wn.2d 568, 579, 14 P.3d 752 (2000).[10] For at the time of Gallagher's trial, WPIC 10.51 was the accomplice liability instruction approved by the Supreme Court's own pattern jury instruction process. Gallagher's claim of ineffective assistance of counsel is also groundless.

That said, I agree that Gallagher's challenge to the accomplice liability instruction fails on its merits. The instruction could not have misled the jury into believing that it could convict the defendant based on proof of his knowledge that his actions would promote a crime other than the crime charged, nor could it have relieved the State of its burden of proving all of the elements of the crime charged. Thus, I concur with the majority's holding that the defective instruction defining accomplice liability was harmless error, but I would instead hold that the error was invited.

Review denied at 148 Wn.2d 1023 (2003).

---

[10] In *State v. Roberts,* 142 Wn.2d 471, 509-10, 14 P.3d 713 (2000) our Supreme Court declared defective an instruction similar to WPIC 10.51. *Roberts* and *Cronin* were filed on December 14, 2000. Gallagher's trial began more than a year before, on August 16, 1999, and judgment and sentence were entered October 22, 1999.