# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>    v.<br><br>JOHN LOTHAR BARAN,<br><br>                    Appellant. | No.  48751-9-II<br><br><br><br>UNPUBLISHED OPINION |

JOHANSON, P.J. — John L. Baran appeals his convictions for two counts of third degree assault against two police officers, one count of fourth degree assault against his roommate, and one count of resisting arrest. He argues that the trial court erred when it admitted prior assault conviction evidence and when it restricted his right to present a defense. He also argues that his counsel was ineffective when counsel failed to assert diminished capacity and voluntary intoxication defenses. We affirm.

## FACTS

### I. BACKGROUND FACTS AND CHARGING

In May 2015, Baran shared a house with Conny Elliott and Thomas Peck. One evening, Baran was intoxicated, argued with both roommates, and harmed Peck. Police officers arrived. The police tried to calm and arrest Baran, but he resisted. As he resisted the officers, Baran grabbed one officer, bent that officer's fingers back as if to break them, and kicked another officer. The

officers eventually handcuffed and arrested Baran after the officers struck Baran several times to subdue him. Baran was charged with two counts of third degree assault against the two officers, one count of fourth degree assault against Peck, and one count of resisting arrest.

## II. MOTIONS IN LIMINE REGARDING PRIOR CONVICTION AND MENTAL HEALTH

Baran brought a motion in limine under ER 401, 402, 403, and 404(b) to preclude the State's use of evidence of several of Baran's previous convictions. He argued that the unfair prejudicial effect of evidence of Baran's past convictions outweighed any slight probative value the evidence might have. The trial court granted the motion.

The State brought a motion in limine to exclude any lay witness testimony about Baran's mental health because no diminished capacity defense was declared and no expert witness or expert witness report had been offered. The trial court granted the motion. There is no evidence in the record that defense counsel requested approval for a mental health expert to evaluate whether Baran's intoxication and/or mental health affected his ability to form the requisite intent for the crimes charged.

## III. TRIAL TESTIMONY

Peck and three police officers testified on the State's behalf. Baran and Elliott came home at 2 or 3 in the morning. Baran and Elliot told Peck that Baran had consumed almost a liter of whiskey with another person. Peck and Elliot got Baran to bed and then went into another room, but Baran began yelling and "stomping down the hall" towards them. 1 Report of Proceedings (RP) at 37. Baran threatened to harm Peck, and Peck testified that at that time, Baran was "not himself" and that Peck had never seen Baran like that before. 1 RP at 37. Peck went outside to

call the police. Peck returned, stood in the front doorway, and told Baran that he called the police. Baran charged forward, causing the door to slam into Peck's shoulder.

When Officer Therman Bibens entered the home, he told Baran to stay seated on the couch and put his hand on Baran's shoulder. Baran grabbed Officer Bibens's arm and pulled Officer Bibens down onto himself. Baran refused to put his hands behind his back and Officer Bibens attempted to put Baran into a vascular neck restraint to subdue him, but failed. Officer Bibens tried to place Baran's arm behind his back, but Baran again resisted, grabbed for Officer Bibens's fingers and tried to break them by bending them backward. Officer Bibens also observed Baran kicking out at another officer.

While Officer Colton Price attempted to assist with placing Baran's hands behind his back, Officer Bibens told Officer Price that Baran was trying to bend Officer Bibens's fingers back to break them. During the struggle, Baran kicked Officer Price in the groin, causing "[e]xtreme" pain. 2 RP at 121. The officers struck Baran until Baran stopped struggling and acquiesced to be handcuffed. Even handcuffed, Baran continued to thrash on the couch and kick at furniture.

Officer Brent Donaldson testified that while he spoke to Elliott, he could see and hear the other officers trying to subdue Baran. He heard Baran say that he was not afraid of the police, that he would fight them, and that he had done so before. Baran was "actively fighting" with the other officers. 2 RP at 158.

Elliott and Baran testified in Baran's defense. Elliott stated that after Peck told Baran that he called the police, Baran ran into the door, but Elliott did not see if the door hit Peck. Once the police arrived, Elliott said they spoke to Baran, approached him, and then began beating him. Baran was "belligerently drunk," but Elliott did not see him strike the officers. 3 RP at 211.

3

Baran remembered having a "meltdown" when Peck said he called the police because Baran was "scared of police." 3 RP at 232. Baran denied charging at the door when Peck was in the doorframe and instead stated that he ran at the door in order to shut it and lock Peck out. He was "verbally violent" when police arrived. 3 RP at 234. Baran testified that all he remembered was the police asking him a question and then punching him in the face repeatedly. When asked if he was "resisting the police attempting to put handcuffs" on him, Baran said yes. 3 RP at 235.

During cross-examination, when asked if he threatened Peck, Baran stated, "[H]e threatened me, as well. It wasn't a solo conversation. I am not an aggressor. I don't go up to people and hurt people." 3 RP at 237. Baran repeated that he does not go up to people and hurt them. Baran clarified his testimony from direct examination and stated that he recalled telling the police to get out of his house many times. He stated that he was "protecting" himself from police, which could have looked like he was resisting. 3 RP at 239. When asked if he called Peck a "snitch" when Peck called the police, Baran stated,

> I told him if he calls the police, he's a freaking snitch. I'm afraid of the cops.
> All the cops do is -- all I've known from childhood, you know, they take me away from my parents. They've -- you know, they put me in a mental institution. They -- you know, all I know police do is hurt me.

3 RP at 240.

## IV. ADMISSION OF PRIOR CONVICTION

Following Baran's testimony, the State requested that the jury be excused and then argued that the substance of Baran's testimony allowed the State to ask Baran about a prior assault conviction. The State emphasized that the assault conviction was only about a year ago when Baran was on probation.

4

Defense counsel objected. Defense counsel argued that admitting this evidence "opens up a whole can of worms" and essentially argued that he did not know if the evidence was probative because a fear of police was not uncommon. 3 RP at 244. Defense counsel also argued that the State could enter this evidence to "push [Baran's] buttons," but because defense counsel could not present evidence to the jury that Baran was autistic, the jury may not properly understand any reactions by Baran, which would be unfair. 3 RP at 245.

The trial court granted the State's request because Baran opened the door to this evidence when he testified about his feelings about police and that he was not an aggressor. The court then held the following colloquy with Baran:

> THE COURT: Well, I am going to allow the State to get in that he has been convicted of an assault in the fourth degree against a community corrections officer, and it's going to be limited to that.
> So, Mr. Baran, if you want to contest that, here's the documents that show that happened. And if you argue about it in front of the jury, it's only going to get worse.
> [BARAN]: Yes, ma'am.
> THE COURT: So when [the State] asks you, what are you going to say if you've been convicted of an assault in the fourth degree?
> [BARAN]: I have, ma'am.
> THE COURT: I'm sorry?
> [BARAN]: I have, ma'am.
> THE COURT: And that was against a community corrections officer?
> [BARAN]: Not mine.
> THE COURT: I said a community corrections officer.
> [BARAN]: Yes, a community corrections officer.

3 RP at 245-46.

The jury returned to the courtroom, and the State asked Baran if he was "previously convicted of assaulting a community corrections officer in 2014?" 3 RP at 249. Baran replied, "Yes." 3 RP at 249. Defense counsel did not seek to admit any further evidence about his previous conviction and did not revisit the topic on redirect examination.

5

The jury returned guilty verdicts on all charges. Baran appeals his convictions.

ANALYSIS

I. ADMISSION OF PRIOR ASSAULT CONVICTION

Specifically challenging his third degree assault convictions, Baran argues that the trial court erred under ER 404(b) when it admitted his prior assault conviction evidence. We disagree because the trial court admitted the evidence under ER 404(a).

A. STANDARD OF REVIEW AND RULES OF LAW

We review the trial court's decision to admit evidence under ER 404(a) for an abuse of discretion. *City of Kennewick v. Day*, 142 Wn.2d 1, 5, 11 P.3d 304 (2000). The trial court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. Barry*, 184 Wn. App. 790, 802, 339 P.3d 200 (2014) (quoting *State v. Rice*, 48 Wn. App. 7, 11, 737 P.2d 726 (1987)). The trial court may exclude evidence if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice." ER 403.

ER 404(a)(1) allows the admission of evidence of *pertinent* character traits for the purpose of proving action in conformity therewith when offered by an accused or "by the prosecution to rebut the same." *Pertinent* is synonymous with *relevant*; pertinent traits are those that tend to make the existence of a material fact more or less probable. *Day*, 142 Wn.2d at 6 (quoting *State v. Eakins*, 127 Wn.2d 490, 495-96, 902 P.2d 1236 (1995)). The long-standing rule in this state is that a criminal defendant who places his character in issue by testifying as to his own past good behavior may be cross-examined as to specific acts of misconduct unrelated to the crime charged. *State v. Renneberg*, 83 Wn.2d 735, 738, 522 P.2d 835 (1974); *State v. Warren*, 134 Wn. App. 44,

64-65, 138 P.3d 1081 (2006), *aff'd*, 165 Wn.2d 17, 195 P.3d 940 (2008). Prior misconduct evidence can be admissible to rebut a defendant's sweeping assertions as to his own good character. *State v. Pogue*, 104 Wn. App. 981, 986, 17 P.3d 1272 (2001).

The rationale underlying the admission of evidence through ER 404(a)(1)'s open door is fairness. *State v. Gallagher*, 112 Wn. App. 601, 610, 51 P.3d 100 (2002). The defendant should not be allowed to "paint[] a false picture" by introducing propensity evidence that the State cannot rebut. *Gallagher*, 112 Wn. App. at 610. Thus, the State may pursue the subject only "to clarify a false impression." *State v. Fisher*, 165 Wn.2d 727, 750, 202 P.3d 937 (2009).

## B. OPENING THE DOOR

Although Baran argues that the trial court erred when it admitted his prior conviction evidence under ER 404(b), his argument fails because the trial court relied on ER 404(a) for the admission of that evidence. The trial court properly granted the State's request to admit the prior conviction evidence because Baran opened the door to this evidence when he testified that he was not an aggressor.[1] This was not error.

Here, when asked if he threatened Peck, Baran testified, "I am not an aggressor" and twice asserted that "I don't go up to people and hurt" people. 3 RP at 237. This type of sweeping assertion as to one's own good character can render prior misconduct evidence admissible to rebut the assertion. *Pogue*, 104 Wn. App. at 986. Baran also stated that "[a]ll the cops do is -- all I've known from childhood, you know, they take me away from my parents. They've -- you know,

---

[1] Although the State argued that Baran's testimony that he was "afraid of police" opened the door, 3 RP at 242, the trial court admitted the evidence on the basis of Baran's testimony that he was "not an aggressor." 3 RP at 245. This was not error. We can affirm on any proper ground.

they put me in a mental institution. They -- you know, all I know police do is hurt me." 3 RP at 240. This testimony implied that Baran was only ever the victim of harm from the police, not an aggressor.

The character trait at issue here—whether Baran is the type of person who would assault a community corrections officer—if proven, makes it more likely that Baran would have committed the assaults against the police officers. Thus, the evidence concerned a pertinent trait of aggression. *See Day*, 142 Wn.2d at 6. Further, at trial, Baran apparently believed his testimony was pertinent—he twice expressed that he was not the type of person who approaches others to harm them. Having gained the benefit of that assertion at trial, Baran cannot now challenge that testimony as not pertinent or relevant to whether he committed the assault crimes.

As the State argues, without the prior conviction evidence, the jury would be left with the improper impression that Baran would not harm anyone. This is the very type of "false picture" that the open-door doctrine seeks to avoid. *Gallagher*, 112 Wn. App. at 610. We hold that it was not an abuse of discretion for the trial court to rule that Baran opened the door to this evidence when he testified that he was not an aggressor.

## C. PREJUDICE

Next, Baran argues that the trial court erred when it did not conduct a balancing analysis of whether the unfair prejudice of this evidence outweighed its relevance. And Baran further argues that the prejudice of the evidence outweighed its probative value such that the trial court erred when it admitted this evidence. The State does not respond to these arguments. We disagree with Baran.

1.      CONSIDERATION OF PREJUDICE

The trial court admitted the prior assault conviction evidence after hearing argument from both parties. The State illustrated the probative nature of the evidence: it was a recent conviction and was relevant to rebut Baran's testimony. Defense counsel argued that entering the conviction evidence could cause a reaction by Baran that the jury would not understand without knowing he is autistic, which was unfair to Baran. Defense counsel also expressed doubt about the relevance of the evidence because a fear of police was not uncommon. In addition, during the pretrial motion in limine, defense counsel argued that the prejudicial effect outweighed the slight probative value of the conviction evidence.

Thus, the trial court heard and considered evidence regarding the potential probative value and prejudicial nature of the evidence. Indeed, the trial court initially agreed to exclude several of Baran's prior convictions before trial because that evidence was more prejudicial than probative. But after Baran opened the door regarding his character trait for aggression, the trial court found that the probative value of the assault conviction increased and outweighed the prejudicial effect. We reject Baran's argument because the record illustrates that, as required by ER 403, the trial court balanced the prejudicial effect of the conviction evidence versus its probative value.

2.      NO UNFAIR PREJUDICE

Baran relies on *Pogue*, *State v. Acosta*, 123 Wn. App. 424, 98 P.3d 503 (2004), and *State v. Escalona*, 49 Wn. App. 251, 742 P.2d 190 (1987), to argue that where a prior conviction is similar to or the same as the current charge, unfair prejudice outweighs any slight relevance. Thus, Baran argues that the prejudice outweighed the probative value of his past conviction such that the trial court erred when it admitted it. Baran's argument based on these cases is unpersuasive.

9

A trial court has "considerable" discretion when it determines whether evidence is admissible under ER 403. *Barry*, 184 Wn. App. at 801. The trial court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Barry*, 184 Wn. App. at 802 (quoting *Rice*, 48 Wn. App. at 11). A danger of unfair prejudice exists when evidence is "'likely to stimulate an emotional response rather than a rational decision.'" *State v. Beadle*, 173 Wn.2d 97, 120, 265 P.3d 863 (2011) (quoting *State v. Powell*, 126 Wn.2d 244, 264, 893 P.2d 615 (1995)). To be relevant, or probative, evidence must tend "'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.'" *State v. Foxhoven*, 161 Wn.2d 168, 176, 163 P.3d 786 (2007) (quoting ER 401).

None of the cases Baran relies on establish his apparent proposition that the prejudice of admitting evidence of prior convictions rests *solely* on the similarity of the prior and current convictions. *Pogue*, 104 Wn. App. 981; *Acosta*, 123 Wn. App. 424; *Escalona*, 49 Wn. App. 251. In each of those cases, the courts considered the prejudicial effect of allowing evidence of a past crime or crimes, but did not evaluate just the similarity of the past conviction and the then-current charge. *Pogue*, 104 Wn. App. at 984-87; *Acosta*, 123 Wn. App. at 434; *Escalona*, 49 Wn. App. at 255-56. Rather, in each of those cases, the reviewing courts considered the proposed evidence's relevancy, such as to rebut a defense, and the extent of the prejudice from the evidence in light of the other evidence. *See Pogue*, 104 Wn. App. at 982-88 (analyzing whether ER 404(b) evidence of past misconduct was admissible to rebut Pogue's defense); *Acosta*, 123 Wn. App. at 434-37 (considering whether admitting defendant's past convictions was appropriate to establish defendant's state of mind under ER 404(b) or to rebut a diminished capacity defense); *Escalona*,

49 Wn. App. 252-56 (analyzing whether ER 404(b) evidence of a past crime was considered by the jury only for improper propensity purposes such that defendant was entitled to a mistrial ruling).

To be probative, evidence must tend "'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.'" *Foxhoven*, 161 Wn.2d at 176 (quoting ER 401). And as was analyzed above, the evidence of Baran's previous assault conviction against a community corrections officer was of consequence to rebut Baran's professed traits of not being an aggressor and being afraid of police who only hurt him. Thus, we hold that the trial court had tenable grounds to conclude the evidence was probative.

The trial court considered the State and defense counsel's arguments about the probative and prejudicial nature of the prior conviction and allowed the State to confirm on Baran's cross-examination only that he had the prior assault conviction. And as was analyzed above—the trial court properly admitted the evidence because Baran's testimony opened the door to such evidence. The trial court's ruling was thus not manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Barry*, 184 Wn. App. at 801-02. We hold that the trial court did not abuse its discretion when it found that the prior conviction evidence was not more prejudicial than it was probative regarding the pertinent character trait of aggressiveness.

## II. RIGHT TO PRESENT A DEFENSE

Challenging each of his convictions, Baran argues that the trial court prohibited him from testifying about his feelings about police and about the details of his past assault conviction such that the trial court restricted his right to present a defense. The State argues that the record does not support Baran's argument. We agree with the State.

A.  STANDARD OF REVIEW AND RULES OF LAW

A claim of a denial of the right to present a defense is reviewed de novo.  *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).  Due process guarantees a defendant's right to a fair opportunity to defend against the State's accusations.  *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).  This right includes the defendant's ability to offer testimony in his defense.  *Chambers*, 410 U.S. at 294; U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. 1, § 22.  A defendant's fundamental right to testify cannot be abrogated by the court.  *State v. Robinson*, 138 Wn.2d 753, 758, 982 P.2d 590 (1999).

B.  LACK OF FACTUAL BASIS

Baran argues that the record shows that he wanted to tell the jury about the specifics of his past conviction, but that the trial court prohibited him from testifying about that or about how he felt about the police.  The record does not support that the trial court prevented Baran from testifying about either issue.

The trial court's colloquy with Baran about the prior conviction was as follows:

> THE COURT:  Well, I am going to allow the State to get in that he has been convicted of an assault in the fourth degree against a community corrections officer, and it's going to be limited to that.
> So, Mr. Baran, if you want to contest that, here's the documents that show that happened.  And if you argue about it in front of the jury, it's only going to get worse.
> [BARAN]:  Yes, ma'am.
> THE COURT:  So when [the State] asks you, what are you going to say if you've been convicted of an assault in the fourth degree?
> [BARAN]:  I have, ma'am.
> THE COURT:  I'm sorry?
> [BARAN]:  I have, ma'am.
> THE COURT:  And that was against a community corrections officer?
> [BARAN]:  Not mine.
> THE COURT:  I said a community corrections officer.
> [BARAN]:  Yes, a community corrections officer.

VRP at 245-46.

Here, Baran was not deprived of his constitutional right to testify; he testified on his own behalf. And the trial court did not tell Baran that he was prohibited from testifying about the details of his past conviction or his feelings about police. Nor did Baran express a desire to so testify.

If Baran wished to so testify, he could have done so on redirect examination. The record does not show that Baran told his counsel that he wished to so testify but was not allowed to or was advised against it. The trial court stated that it would get "worse" if Baran argued about the past conviction. 3 RP at 246. But the trial court did not direct Baran as to what he could not say and appears to have warned Baran in light of the fact that the State had proof of the conviction. Because Baran cannot establish the factual basis upon which his constitutional argument rests, we hold that the trial court did not restrict his right to present his defense.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Apparently challenging each of his convictions, Baran argues that his counsel was ineffective for failing to assert a diminished capacity and/or voluntary intoxication defense and to seek court approval to employ a court-appointed expert to support those defenses. The State argues that Baran's counsel was not ineffective where counsel made an appropriate strategy choice and where Baran has not established prejudice as a result of his counsel's performance. We agree with the State.

A. STANDARD OF REVIEW AND RULES OF LAW

A claim that counsel was ineffective is a mixed question of law and fact that we review de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to show reversal is warranted based on ineffective assistance of counsel, the defendant bears the burden to show (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

B. DEFICIENT PERFORMANCE

Baran argues that in light of his mental health issues and his intoxication the night of the incident, defense counsel was deficient because there was no tactical reason not to assert diminished capacity and voluntary intoxication defenses. The State argues that it was reasonable for defense counsel not to pursue these defenses when Baran denied each of the assaults, and denial is inconsistent with these defenses. We agree with the State.

1. RULES OF LAW

Representation is deficient if it falls "below an objective standard of reasonableness," given all of the circumstances. *Strickland*, 466 U.S. at 688. Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Counsel's conduct is not deficient if it can be

14

characterized as a legitimate trial strategy, but the relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *State v. Grier*, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011).

Assault is a specific intent crime. *Jones*, 183 Wn.2d at 346. A diminished capacity defense requires evidence of a mental condition, which prevents the defendant from forming the requisite intent necessary to commit the crime charged. *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003). Intent to assert diminished capacity must be declared pretrial. *State v. Clark*, 187 Wn.2d 641, 651, 389 P.3d 462 (2017). This is because defense counsel must obtain expert testimony to support the defense and disclose that evidence to the prosecution pretrial to allow the State opportunity to decide whether to obtain its own evaluation. *Clark*, 187 Wn.2d at 651.

A voluntary intoxication defense is separate from, but similar to, a diminished capacity defense. *State v. Thomas*, 123 Wn. App. 771, 781, 98 P.3d 1258 (2004). An intoxication defense allows consideration of the effect of voluntary intoxication by alcohol or drugs on the defendant's ability to form the requisite mental state. *Tilton*, 149 Wn.2d at 784. "But unlike diminished capacity, it is not necessary to present expert testimony to support an involuntary intoxication defense" because "effects of alcohol are commonly known and jurors can draw reasonable inferences from testimony about alcohol use." *Thomas*, 123 Wn. App. at 782.

2.    REASONABLE TRIAL TACTIC

As the State argues, *In re Personal Restraint of Woods*, 154 Wn.2d 400, 421, 114 P.3d 607 (2005), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006), is instructive here. In *Woods*, the defendant claimed his attorneys were ineffective for failing to seek a diminished capacity defense based on what he claimed was heavy drug usage

before his murder crimes. 154 Wn.2d at 421. The Supreme Court disagreed, holding the following:

> There is nothing in the record to show that Woods' attorneys were not aware of this potential defense and declined to present it. From a tactical standpoint, we believe it was reasonable for his counsel to pursue the alibi defense rather than diminished capacity because Woods continuously denied his involvement in the crimes. To pursue the diminished capacity defense would have required Woods to essentially admit that he committed the murders, a position entirely inconsistent with his contention that he did not commit the murders. Woods, in short, does not provide any persuasive evidence that his trial attorneys were deficient in not presenting a diminished capacity defense.

*Woods*, 154 Wn.2d at 421.

As in *Woods*, a diminished capacity and/or voluntary intoxication defense would not have been appropriate here in light of Baran's testimony and the other evidence.[2]

Baran testified that he remembered having a "meltdown" when Peck called the police. 3 RP at 232. Baran denied charging at the door when Peck was in the doorframe, and instead he stated that he ran at the door in order to shut it and lock Peck out. During direct examination, Baran testified that all he remembered was the police asking him a question and then punching him repeatedly. But on further direct and cross-examination, Baran also stated that he recalled

---

[2] Baran argues that there was a "great deal" of evidence in the record that he suffered from autism and other mental disorders that could have prevented him from forming the requisite intent for the assault crimes. Br. of Appellant at 34. This belies the record. The trial court granted the State's motion in limine to exclude testimony by any lay witness about Baran's mental health because no diminished capacity defense was declared and no expert witness or expert witness report had been offered. Thus, there was no testimony about Baran's mental disorders and whether this affected his ability to form the requisite intent. Baran cites to a letter from Peggy McCarthy, Executive Director of the Southwest Washington National Alliance on Mental Illness, as evidence of his mental disorders. But this letter was not part of the trial record; it was sent to the trial court after trial and sentencing.

being "verbally violent" when police arrived, telling police to leave his house many times, resisting arrest, and protecting himself from the police officers. 3 RP at 234.

Officers Bibens and Price testified that Baran refused to put his hands behind his back to be handcuffed, reached up, pulled Officer Bibens down on top of him, grabbed Officer Bibens's fingers to bend them back, and kicked Officer Price. Officer Donaldson testified that Baran actively fought the officers.

The diminished capacity defense and the involuntary intoxication defense both require a showing that the defendant was prevented from forming the requisite intent necessary to commit the crime charged. *Tilton*, 149 Wn.2d at 784. The testimony at trial illustrates that Baran was not so intoxicated or obstructed by a mental condition that he could not form intent—he was cognizant enough to recall much of what happened and to actively resist arrest. Additionally, Baran's testimony was *not* that his mental health issues or intoxication level prevented him from forming the required intent to commit assault. Baran testified to his intent: he meant to slam the door to lock Peck out and to resist the officers in order to protect himself, not to harm them.

To consider whether counsel acted with a legitimate trial strategy, we consider whether counsel's choices were reasonable. *Grier*, 171 Wn.2d at 33-34. As in *Woods*, a diminished capacity or involuntary intoxication defense would have required Baran to admit that he physically committed the acts of the assaults, but that he was prevented from forming the requisite intent for those crimes. 154 Wn.2d at 421. As the State argues, this position would have been inconsistent

with his testimony that he had a different intent during each of the acts at issue. Thus, from a tactical standpoint, it was reasonable for Baran's counsel to pursue a defense that he did not intend to assault Peck or the officers, rather than a diminished capacity or involuntary intoxication defense.

We hold that Baran's attorney acted reasonably and thus was not deficient in choosing to present a denial defense rather than a diminished capacity or voluntary intoxication defense.[3]

## IV. APPELLATE COSTS

Baran asks that we exercise our discretion to deny the State appellate costs. The State objects to our consideration of appellate costs at this time.

> A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review, or unless the commissioner or clerk determines an adult offender does not have the current or likely future ability to pay such costs.

RAP 14.2.

Under RAP 14.2, we defer to our court commissioner to consider whether to award appellate costs in due course.

---

[3] Defense counsel must obtain expert testimony to support a diminished capacity defense. *Clark*, 187 Wn.2d at 651. Here, there is no expert testimony that Baran could not form the requisite intent, thus Baran must rely on facts outside the record to argue that his attorney was deficient for not obtaining such an expert, if one exists. A personal restraint petition is the appropriate means of asserting an argument based on facts outside the record. *McFarland*, 127 Wn.2d at 335.

No. 48751-9-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

MELNICK, J.

SUTTON, J.